**Lynda Pearl BOAZ, Appellant,**

v.

**Gene Davis BOAZ and Ralph Boaz, Appellees.**

No. 01–04–00892–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 13, 2006.

---

Gary E. Patterson, Houston, TX, John E. Russo, Conroe, TX, for Appellant.

Kelly McClendon, Lenette Terry, Terry & Terry, Angleton, TX, Rodney C. Wiseman, Lake Jackson, TX, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and HIGLEY.

## OPINION

TERRY JENNINGS, Justice.

Appellant, Lynda Pearl Boaz, challenges the trial court's rendition of summary

judgment in favor of appellee, Gene Boaz, in her bill of review proceeding to set aside a final divorce decree.[1] In four points of error, Lynda contends that the trial court erred in granting Gene's no-evidence summary judgment motion and in dismissing appellee, Ralph Boaz, as a party. We affirm.

### Factual and Procedural Background

Lynda Pearl Boaz and Gene Boaz married in 1984. Before their marriage, Gene owned a majority of the stock in Civil Mechanical Incorporated ("CMI"), an industrial construction company that he had founded in March 1981. Between 1983 and 1984, Gene started another venture, a general partnership with his brother, Ralph Boaz, called Brothers Equipment ("Brothers"). Brothers owned construction machinery, which it leased, mostly to CMI, on a monthly rental basis. Brothers also owned real property, including a 600-acre ranch. In 1998 or 1999, Gene and Ralph decided to wind down the Brothers partnership, and Brothers sold all of its equipment to CMI. In exchange for the equipment, CMI gave Brothers a ten-year note worth approximately $400,000. When Gene and Ralph dissolved Brothers, they agreed that ownership of the ranch would be transferred to Ralph and that Gene would receive the $400,000 note.[2]

Gene then entered into negotiations with Wolfenson Electric, Inc. ("Wolfenson") for the sale of his ownership interest in CMI stock. In an August 11, 1999 "Letter of Intent to Purchase," Wolfenson agreed to purchase the 70% of CMI stock representing Gene's interest for $2.5 million. On June 27, 2000, Gene and Wolfenson signed a contract for the sale of Gene's CMI stock for the agreed $2.5 million purchase price.

Meanwhile, Lynda had sued Gene for divorce, seeking a division of the community estate acquired during the marriage. On August 19, 1999, in connection with the impending divorce proceeding, both parties filed inventories with the trial court. In his inventory, Gene purported to delineate his real and personal property "before marriage" and his real and personal "community property." Gene also declared all CMI stock as his separate "personal property before marriage" and, despite the August 11, 1999 letter of intent entered into with Wolfenson, listed the value of his CMI stock as "unknown." With respect to Brothers, Gene claimed half of the partnership as his separate "real property before marriage" and listed its value at $200,000. He also recognized a "community interest in Brothers" (presumably the one-half partnership interest acquired from Ralph in exchange for the ranch) and listed it as "community personal property" valued at $200,000.

On November 19, 1999, the trial court entered an agreed upon final decree of divorce that divided the property from the marital estate. Among the various provisions, the decree awarded Gene ownership of "all stocks, bonds, and securities" in connection with CMI. It also awarded Gene "the business known as Brothers Equipment," including all "rights and privileges, past, present, or future, arising out of or in connection with the operation of such business." The trial court awarded Lynda certain other property.

---

1. The underlying divorce action was styled *In the Matter of the Marriage of Lynda Pearl Boaz and Gene Davis Boaz,* in the 300th Judicial District Court of Brazoria County, Texas.

2. The precise date or manner of the Brothers partnership dissolution is not clear from the record. However, it is clear from Gene's deposition testimony that "[Ralph] took the ranch and [Gene] took the note."

On October 1, 2001, Lynda initiated the instant bill of review proceeding, seeking to set aside and rescind the divorce decree. In her petition, Lynda alleged that the decree was based on fraud and a breach of Gene's fiduciary duties owed to Lynda and the community estate. Specifically, Lynda asserted that Gene had perjured himself in his inventory because he had claimed that the value of his CMI stock was "unknown" despite the fact that he had already agreed to sell it for $2.5 million. Lynda also named Ralph as a party and asserted that Gene and Ralph had entered into certain transactions in order to hide community assets and "intentionally conceal[ ] the true nature of assets divided in the divorce." Lynda alleged that Gene had committed "fraud on the community" and that she was given no consideration or accord for the community time, talent, labor, and money that went into the enhancement of Gene's separate property during the marriage.

Gene then filed his no-evidence summary judgment motion, asserting that Lynda "[could] not provide any evidence to support the element of fraud, accident or wrongful act of the opposite party." Ralph moved for dismissal with prejudice of Lynda's claim against him. After a hearing, the trial court granted Ralph's motion to dismiss and, subsequently, without specifying the grounds upon which it relied, entered an order granting Gene's no-evidence summary judgment motion.

## Standard of Review

To prevail on a no-evidence summary judgment motion, a movant must allege that there is no evidence of an essential element of the adverse party's cause of action or affirmative defense. TEX.R. CIV. P. 166a(i); *Fort Worth Osteopathic Hosp. v. Reese*, 148 S.W.3d 94, 99 (Tex.2004); *Flameout Design & Fabrication, Inc. v.*

*Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.] 1999, no pet.). We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832–33 (Tex.App.-Dallas 2000, no pet.). Although the non-moving party is not required to marshal its proof, it must present evidence that raises a genuine issue of material fact on each of the challenged elements. TEX.R. CIV. P. 166a(i); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex.2004). A no-evidence summary judgment motion may not properly be granted if the non-movant brings forth more than a scintilla of evidence to raise a genuine issue of material fact on the challenged elements. *Ridgway*, 135 S.W.3d at 600. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). When reviewing a no-evidence summary judgment motion, we assume that all evidence favorable to the non-movant is true and indulge every reasonable inference and resolve all doubts in favor of the non-movant. *Spradlin v. State*, 100 S.W.3d 372, 377 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

## Bill of Review

In her first point of error, Lynda argues that the trial court erred in granting summary judgment in favor of Gene because she "proved, as a matter of law, or at least raised a genuine issue of material fact,"(1) that she has "a meritorious defense" in the underlying divorce action, (2) that she was prevented from making because of the fraud of Gene, (3) and which was unmixed with any fault or negligence of her own. Gene responds by arguing that because Lynda "proffered no evidence of extrinsic

fraud," the trial court did not err in granting his no-evidence summary judgment motion.

Upon the expiration of the trial court's plenary power, a judgment cannot be set aside by the trial court except by bill of review for sufficient cause, filed within the time allowed by law. Tex.R. Civ. P. 329b(f). A bill of review is an equitable action brought by a party to a prior action who seeks to set aside a judgment that is no longer subject to challenge by a motion for new trial or appeal. *Caldwell v. Barnes*, 154 S.W.3d 93, 96 (Tex. 2004). To be entitled to a bill of review, a petitioner must ordinarily allege and prove: (1) that she has a meritorious defense to the underlying cause of action, (2) that she was prevented from making by fraud, accident, or wrongful act of the opposite party or official mistake, (3) and which was unmixed with any fault or negligence of her own. *Id.; Hernandez v. Koch Mach. Co.*, 16 S.W.3d 48, 57 (Tex. App.-Houston [1st Dist.] 2000, pet. denied).

Bills of review seeking relief from otherwise final judgments are scrutinized by courts of equity with extreme jealousy, and grounds on which interference will be allowed are narrow and restricted. *Montgomery v. Kennedy*, 669 S.W.2d 309, 312 (Tex.1984). The grounds upon which a bill of review can be obtained are narrow because the procedure conflicts with the fundamental policy that judgments must become final at some point. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003). Although a bill of review is an equitable proceeding, the fact that an injustice may have occurred is not sufficient to justify relief by bill of review. *Wembley Inv. Co. v. Herrera*, 11 S.W.3d 924, 927 (Tex.1999); *Jones v. Corcoran*, 95 S.W.3d 673, 675 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

In the context of bill of review proceedings, fraud is classified as either "extrinsic" or "intrinsic." *King Ranch*, 118 S.W.3d at 752. Only extrinsic fraud will entitle one to relief through a bill of review. *Id.* Intrinsic fraud will not support a bill of review because each party must guard against adverse findings on issues directly presented. *Id.*

Extrinsic fraud is fraud which denies a party the opportunity to fully litigate at trial all the rights or defenses that could have been asserted. *Id.* It is wrongful conduct practiced outside of the adversary trial—such as keeping a party away from court, making false promises of compromise, denying a party knowledge of the suit—that affects the manner in which the judgment is procured. *Ince v. Ince*, 58 S.W.3d 187, 190 (Tex.App.-Waco 2001, no pet.). Extrinsic fraud is collateral fraud in the sense that it must be "collateral" to the matter actually tried and not something that was actually or potentially in issue at the trial. *Montgomery*, 669 S.W.2d at 312.

Intrinsic fraud, by contrast, relates to the merits of the "issues which were presented and resolved—or could have been resolved—in the former action." *Ince*, 58 S.W.3d at 190. Within that term are included such matters as fraudulent instruments, perjured testimony, or any matter which was actually presented to and considered by the trial court in rendering the judgment assailed. *Alexander v. Hagedorn*, 148 Tex. 565, 226 S.W.2d 996, 1001 (1950). Intrinsic fraud is "inherent in the matter considered and determined in the trial 'where the fraudulent acts pertain to an issue involved in the original action, or where the acts constituting the fraud were, or could have been litigated therein.'" *Montgomery*, 669 S.W.2d at 313. "Issues underlying the judgment attacked by a bill of review are intrinsic and thus have no probative value on the fraud nec-

essary to a bill of review." *King Ranch,* 118 S.W.3d at 752.

### Inventory

■ Lynda argues that because "Gene perjured himself on the Inventory and Appraisement," and because he had "a fiduciary relationship ... as to the community property," Gene's concealment of community assets constituted extrinsic fraud. In addition to the alleged misrepresentation regarding the value of CMI, Lynda asserts that Gene did not disclose in his inventory: (1) the $400,000 note that CMI gave to Brothers in exchange for Brothers's equipment, (2) the more than 600–acre ranch that had belonged to Brothers prior to the dissolution of the partnership, and (3) the 2.5 acres of land with a shop building on it in Clute, Texas that Brothers had purchased from CMI during Lynda and Gene's marriage. Lynda argues that she was defrauded because she would have not entered into the divorce agreement had Gene disclosed these facts.

Gene did claim CMI as his separate property, but the record reveals that the value of CMI was a contested issue during the divorce proceedings. Lynda explained that her attorney hired a business evaluator to appraise CMI for the purpose of the divorce action and that Lynda gave all the relevant documents to her attorney, including CMI financial statements. Although Lynda contends that Gene refused to authorize the release of his financial records with respect to this bill of review proceeding, Lynda has presented no evidence that he refused any similar requests during the divorce proceedings. Lynda had the opportunity to, and apparently did investigate the value of CMI in connection with the divorce settlement. Thus, even if Gene intentionally perjured himself on his inventory regarding the known value of CMI, that perjury would not constitute extrinsic fraud. *See Montgomery,* 669 S.W.2d at 313 ("It is particularly well-established that the alleged perjury of a witness on a contested issue, which the opposing party had the opportunity to refute, is intrinsic fraud."). Accordingly, Lynda did not present more than a scintilla of evidence to establish extrinsic fraud based on either Gene's failure to disclose his negotiations with Wolfenson or any misrepresentations he made regarding CMI's value. *See Kennell v. Kennell,* 743 S.W.2d 299, 301 (Tex.App.-Houston [14th Dist.] 1987, no writ) (holding divorced wife's summary judgment evidence on bill of review as to several misrepresentations made by former husband did not show extrinsic fraud because information regarding true value of company was available during original divorce proceeding through normal discovery procedures); *Bankston v. Bankston,* 251 S.W.2d 768, 773 (Tex.Civ.App.-Dallas 1952, no writ) (affirming summary judgment for bill-of-review defendant where husband allegedly misrepresented values of assets, but wife's attorney had independently investigated values).

■ Lynda's claim also fails with respect to assets that she contends were excluded from the inventory. Even if Gene was required to list these assets in his inventory as Lynda contends, "perjured testimony or testimony withheld, which would have a bearing on an issue in the trial, is not a sufficient basis for setting aside a final judgment on bill of review." *Hamborsky v. Hamborsky,* 584 S.W.2d 330, 332 (Tex.Civ.App.-San Antonio 1979, no writ); *see also King Ranch,* 118 S.W.3d at 752. ("Issues underlying the judgment attacked by a bill of review are intrinsic and thus have no probative value on the fraud necessary to a bill of review.").

■ The cases cited to by Lynda in support of her bill of review are inapposite.

It is true that a "meritorious defense" may be shown where a husband conceals assets, misrepresents a company's financial condition, or does not disclose funds on an inventory. However, as noted above, to support a bill of review, a plaintiff must also show extrinsic fraud—"fraud [that] prevented the party from knowing about and presenting his legal rights at trial." *Montgomery,* 669 S.W.2d at 314; *see also Rathmell v. Morrison,* 732 S.W.2d 6, 13–14 (Tex.App.-Houston [14th Dist.] 1987, no writ).

■ In her briefing, Lynda cites *Montgomery* for the proposition that "concealment of a material fact by a fiduciary charged with the duty of full disclosure is extrinsic fraud." 669 S.W.2d at 313. In *Montgomery,* the supreme court held that a trustee had committed extrinsic fraud when he concealed trust assets in order to prevent their inclusion in an agreed judgment involving the beneficiary. *Id.* at 313–14. *Montgomery* too, however, is inapposite to the case at bar. In *Montgomery,* the trustee had a fiduciary duty to the beneficiary. *Id.* at 313. We note that husbands and wives generally owe a fiduciary duty to one another. *Vickery v. Vickery,* 999 S.W.2d 342, 357 (Tex.1999); *Matthews v. Matthews,* 725 S.W.2d 275, 279 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.). However, adverse parties who have retained professional counsel, including husbands and wives in a suit for divorce, do not owe fiduciary duties to one another. *Boyd v. Boyd,* 67 S.W.3d 398, 405 (Tex.App.-Fort Worth 2002, no pet.). In addition, *Montgomery* made clear that "when the allegedly fraudulent act constitutes an issue in the action in which the judgment was rendered, the fraud is intrinsic." 669 S.W.2d at 314 (citing *Kelly v. Wright,* 144 Tex. 114, 119, 188 S.W.2d 983, 985–86 (1945)). Here, Gene owed no fiduciary duty to Lynda during the pendency of the divorce proceedings, and Lynda has not presented more than a scintilla of evidence to support a finding of extrinsic fraud in connection with the inventory.

### Fraud on the Community

■ Lynda also argues that Gene committed extrinsic fraud on her community interest because he "intentionally concealed the true nature of assets divided in the divorce, and intentionally misclassified these assets as his own separate property."

■ Fraud on the community in the wrongful disposition of community assets is "[t]he breach of a legal or equitable duty which violates the fiduciary relationship existing between spouses." *In re Marriage of Moore,* 890 S.W.2d 821, 827 (Tex. App.-Amarillo 1994, no writ). Such fraud can be considered by the trial court in the division of community property. *See Schlueter v. Schlueter,* 975 S.W.2d 584, 589–90 (Tex.1998).

We note that despite Lynda's claim of "fraud on the community," her own deposition testimony reveals that she and her attorney knew, at the time of the divorce, that Gene had previously used community funds to "pay[ ] CMI debts" and "keep [CMI] going during [the] marriage."[3] Gene indicated to Lynda, by way of his inventory, that he considered CMI and one-half of Brothers to be his separate property. The other one-half of Brothers, along with a note receivable from CMI,

---

**3.** Lynda's deposition testimony reveals that she and her attorney had documentation of specific instances of infusion of community funds into CMI. Furthermore, Gene's inventory included a $42,000 note receivable from CMI listed as "community personal property."

were among the items listed as "personal community property." In this way, the "character" of both CMI and Brothers was directly at issue during the divorce proceedings. Lynda, aided by her attorney and appraiser, and with knowledge and evidence of Gene's use of community funds, could have explored any "fraud on the community" or reimbursement claims involving CMI or Brothers in the underlying divorce action. Lynda has brought forward no evidence of extrinsic fraud showing that Gene prevented Lynda from presenting her case at the time of the divorce proceedings. Instead, it is in her bill of review that Lynda seeks to relitigate the division of the marital estate and the character of certain property within the marital estate.

One purpose of divorce proceedings is to resolve the differences in the parties' perceptions or assertions of fact. *Kennell*, 743 S.W.2d at 301. It might well be that the trial court would have divided the community property in a different manner had it heard evidence of Gene's alleged transfers of community funds during the marriage for the benefit of CMI and Brothers. However, the purpose of a bill of review is not to reopen litigation every time a party, upon further reflection, decides that she is dissatisfied with the result in a case. *Id.*

In sum, Lynda did not present any summary judgment evidence demonstrating that Gene's alleged perjury in regard to the inventory and his alleged fraud on the community prevented her from asserting her rights and defenses during the divorce proceeding. *See Montgomery*, 669 S.W.2d at 312. Thus, she presented no genuine issue of material fact as to extrinsic fraud. Accordingly, we hold that the trial court did not err in granting Gene's no-evidence summary judgment motion.

We overrule Lynda's first point of error.

## Conclusion

Having held that the trial court did not err in granting Gene's no-evidence summary judgment motion against Lynda in her bill of review proceeding, we need not reach Lynda's second, third, and fourth points of error in which she contends that the trial court erred in dismissing Ralph as a party in the proceeding.

We affirm the judgment of the trial court.