

# NUMBER 13-09-00227-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CHERYL WEATHERLY BINNIE,                                              Appellant,

v.

CANDACE WEATHERLY COYLE,                                              Appellee.

### On appeal from the 267th District Court
### of DeWitt County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Benavides
### Memorandum Opinion by Justice Benavides

Appellant, Cheryl Weatherly Binnie, appeals the trial court's order granting summary judgment in a bill of review proceeding in favor of appellee, Candace Weatherly Coyle. Binnie filed the underlying bill of review proceeding arguing that she was prevented from filing post-judgment motions and an appeal from a judgment against her because she did not receive timely notice of the judgment. By one issue, Binnie argues that the summary judgment evidence raised an issue of material fact on whether: (1) her failure to file a

motion for new trial or to advance an appeal was caused by Coyle's fraud, accident, or wrongful act or by an official mistake; and (2) her failure was unmixed with any negligence of her own. We affirm.[1]

## I. PROCEDURAL BACKGROUND

Binnie and Coyle are sisters. Their father, who died while the proceedings below were pending, was Gerald Craft Weatherly. In May 2003, Coyle sued Binnie in DeWitt County, Texas, alleging intentional interference with a real estate sales contract, conversion, and intentional interference with inheritance rights.[2] Also in May 2003, Binnie and Gerald sued Coyle in Dallas County, Texas, alleging causes of action for theft, conversion, unjust enrichment, fraud, embezzlement, abuse of process, and breach of fiduciary duty.[3] In September 2003, Gerald created a trust called the Gerald Craft Weatherly Trust (the "Trust"), and in July 2004, the Trust was substituted as a plaintiff in Gerald's place in the Dallas County case. On September 20, 2004, the Dallas County District Court transferred Binnie and the Trust's suit against Coyle to DeWitt County, where it was consolidated with Coyle's suit against Binnie. On February 13, 2006, the trial court realigned the parties so that Binnie and the Trust were the plaintiffs/counter-defendants and Coyle was the defendant/counter-plaintiff.

On March 15, 2007, the case was tried to a jury. It is undisputed that at the time of

---

[1] Because this is a memorandum opinion, and the parties are familiar with the facts, we will only discuss those facts necessary for the disposition of this appeal. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

[2] Trial court cause number 04-10-19,788, *The Gerald Craft Weatherly Revocable Trust and Cheryl Weatherly Binnie v. Candace Weatherly Coyle, Individually and d/b/a The Secret Garden*, in the 267th District Court of DeWitt County, Texas.

[3] Trial court cause number 03-05621, *The Gerald Craft Weatherly Trust and Cheryl Weatherly Binnie v. Candace Weatherly Coyle*, in the 160th District Court of Dallas County, Texas.

trial, the Trust was represented by an attorney named Melissa Ray. Binnie appeared and testified at trial. The jury found that Binnie intentionally interfered with Coyle's inheritance rights and with a real estate contract belonging to Coyle. The trial court signed a judgment on November 5, 2007, awarding Coyle actual damages, punitive damages, prejudgment interest, and court costs totaling $484,252.44. The judgment also decreed that Binnie and the Trust take nothing on their claims against Coyle. Binnie did not file postjudgment motions or an appeal from the November 5, 2007 judgment.

On July 28, 2008, Binnie filed a bill of review proceeding in the DeWitt County District Court. Binnie asserted that she had not received notice of the judgment until June 11, 2008, after the trial court's plenary power expired and after the deadline to file an appeal. Binnie alleged that she was prevented from pursuing postjudgment motions and from seeking appellate relief because the district clerk failed to mail the notice of entry of judgment to her. Alternatively, Binnie alleged that Coyle's counsel, Paul Romano, had failed to serve her with some of Coyle's pleadings despite knowing that Binnie was not represented by counsel. Binnie argued that if Romano had properly served Binnie, as he was required to do with a pro se litigant, she would have been put on notice that she was not represented by Ray in her individual capacity. Binnie claimed she was not negligent in failing to file postjudgment motions or an appeal from the judgment because she reasonably believed that Ray also represented her in her individual capacity, but Ray never informed her that the judgment had been signed. Binnie further alleged that she had meritorious grounds for postjudgment motions or for an appeal.

Coyle moved for summary judgment on traditional and no-evidence grounds. Coyle asserted that Binnie was not entitled to a bill of review because there was no evidence that (1) Binnie's failure to file a motion for new trial or to advance and appeal was caused by

3

Coyle's fraud, accident, or wrongful act or by an official mistake; and (2) the failure was unmixed with any fault or negligence by Binnie. Coyle's traditional motion for summary judgment argued that she had conclusively established (1) that she had committed no fraud, accident, or wrongful act that caused Binnie's failure to advance postjudgment motions or an appeal; and (2) there was no official mistake. Binnie filed a response and attached evidence, discussed below. On January 22, 2009, the trial court granted Coyle's motion for summary without stating the grounds for its ruling. Binnie filed a motion for new trial, which was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c). This appeal ensued.

## II. STANDARD OF REVIEW

When a trial court grants summary judgment in a bill of review proceeding, we review the ruling using the ordinary summary judgment standards of review. *See Boaz v. Boaz*, 221 S.W.3d 126, 130 (Tex. App.–Houston [1st Dist.] 2006, no pet.); *see also Barowski v. Gabriel*, Nos. 04-08-00800-CV, 04-08-00801-CV, 2010 WL 3030874, at *2 (Tex. App.–San Antonio Aug. 4, 2010, no pet.) (mem. op.); *Chemject Int'l, Inc. v. Sw. Bell Tel. Co.,* Nos. 13-04-567-CV, 13-06-032-CV, 2007 WL 177651, at *5 (Tex. App.–Corpus Christi Jan. 25, 2007, pet. denied) (mem. op.). A no-evidence summary judgment is equivalent to a pretrial directed verdict, and we apply the same legal sufficiency standard on review. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581-82 (Tex. 2006); *Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 772 (Tex. App.–Corpus Christi 2003, no pet.) (op. on reh'g). Once an appropriate motion for no-evidence summary judgment is filed, the burden of producing evidence is entirely on the non-movant; the movant has no burden to attach any evidence to the motion. TEX. R. CIV. P. 166a(i). We may not consider any evidence presented by the movant unless it creates a fact question. *Binur v. Jacobo,* 135 S.W.3d

4

646, 651 (Tex. 2004); *Newkumet v. Allen*, 230 S.W.3d 518, 521 (Tex. App.– Eastland 2007, no pet.).

To defeat a no-evidence motion for summary judgment, the non-movant must merely produce a scintilla of probative evidence to raise a genuine issue of material fact. *Ortega*, 97 S.W.3d at 772. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion of a fact.'" *Id*. (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). More than a scintilla exists when the evidence "'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Id.* (quoting *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994)). In determining whether the non-movant has met its burden, we review the evidence in the light most favorable to the non-movant, crediting such evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Tamez*, 206 S.W.3d at 582; *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).[4]

### III. ANALYSIS

Binnie argues that she produced evidence demonstrating that her failure to file postjudgment motions or an appeal was unmixed with any negligence of her own. We disagree.

### A. Bill of Review Elements

To prevail on a bill of review when the party has participated in the trial, the bill-of-

---

[4] Coyle filed both a no-evidence and a traditional motion for summary judgment. The trial court did not state the reasons for granting the motions for summary judgment. Because we find that Coyle's no-evidence motion was properly granted, we need not address the traditional motion, and we only set out the standard of review for a no-evidence motion. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004) (holding that if non-movant fails to defeat the no-evidence motion, there is no need to address the traditional motion); *see also Chemject Int'l, Inc. v. Sw. Bell Tel. Co.,* Nos. 13-04-567-CV, 13-06-032-CV, 2007 WL 177651, at *5 n.10 (Tex. App.–Corpus Christi Jan. 25, 2007, pet. denied) (mem. op.).

review plaintiff must show: (1) her failure to file postjudgment motions or failure to advance an appeal; (2) caused by the fraud, accident, or wrongful act of the opposing party or by an official mistake; (3) unmixed with any fault or negligence on the bill-of-review plaintiff's part; and (4) a meritorious ground of appeal. *See San Patricio County v. Nueces County*, 214 S.W.3d 536, 544 (Tex. App.–Corpus Christi 2006), *rev'd in part on other grounds*, 246 S.W.2d 651 (Tex. 2008) (citing *Petro-Chem. Transport v. Carroll*, 514 S.W.2d 240, 244-46 (Tex. 1974)). It is undisputed that Binnie failed to file postjudgment motions or an appeal. Likewise, Coyle did not argue below that Binnie could not establish a meritorious ground for an appeal.

The no-evidence motion challenged elements (2) and (3). With respect to the third element, an allegation that the bill-of-review plaintiff's own attorney was negligent is not sufficient to support a bill of review. *See Transworld Fin. Servs. Corp. v. Briscoe,* 722 S.W.2d 407, 408 (Tex. 1987). Rather, we must impute the actions of a bill-of-review plaintiff's attorney to the bill-of-review plaintiff. *See In re Nat'l Unity Ins. Co.*, 963 S.W.2d 876, 878-79 (Tex. App.–San Antonio 1998, orig. proceeding); *Nichols v. Jack Eckerd Corp.*, 908 S.W.2d 5, 8 (Tex. App.–Houston [1st Dist.] 1995, no writ)*.

## B.    Binnie's Evidence

Binnie argues that although she was not represented by counsel at the time of the judgment, she reasonably believed that Ray was her attorney and was pursuing postjudgment and appellate relief on her behalf.[5] Binnie presented the following evidence to show her lack of negligence in failing to file postjudgment motions or an appeal: (1) her

---

[5] Binnie does not ask this Court to hold that Ray actually did represent her below. Binnie concedes, as she must, that if Ray was her attorney, then Binnie's bill of review petition would fail because Ray's knowledge of the judgment would be imputed to her. *See In re Nat'l Unity Ins. Co.*, 963 S.W.2d 876, 878-79 (Tex. App.–San Antonio 1998, orig. proceeding).

own affidavit; (2) her husband's affidavit; (3) Ray's deposition testimony; (4) motions and orders filed in the underlying proceeding relating to the withdrawal of her prior attorneys; (5) the affidavit of and notices sent by Tabeth Gardner, the District Clerk of DeWitt County, Texas; and (6) an affidavit from her former attorney, Mark Allen.

The documents Binnie submitted demonstrate that initially, she and the Trust were represented by Allen. According to Allen, in late 2004 or early 2005, Ray began subleasing an office in the same office building as Allen. Allen hired Ray to work on several of his cases. In early 2005, Allen decided to close his office and work from home on a much smaller scale. Thus, Ray took over many of Allen's cases.

On July 27, 2005, Ray filed a motion to substitute as counsel for the Trust, and Binnie signed the motion as "Trustee of the Gerald Craft Weatherly Revocable Trust." The trial court signed an order on July 28, 2005, granting the motion, substituting Ray as the Trust's counsel, and releasing Allen from the case as attorney for the Trust. Gardner, through her deputy clerk, sent a notice on July 27, 2005 to Allen, Ray, and Coyle's attorney notifying them of the order.

On April 17, 2006, an attorney named John F. Henderson filed a motion to substitute in as Binnie's counsel in her individual capacity. Binnie signed the motion in her individual capacity. The motion was granted the next day, on April 18, 2006. Thus, as of April 2006, the Trust was represented by Ray, and Binnie was represented by Henderson.

On May 2, 2006, Henderson sent a letter to Coyle's attorney stating that he had accepted a job at the Kaufman County District Attorney's office and that he would be withdrawing as Binnie's counsel. The letter states that "Ms. Binnie has already retained new counsel[,] and he will be filing a notice of appearance." On May 11, 2006, Henderson filed an "Agreed Motion to Withdraw," stating that Binnie "is not opposed to the filing of this

7

motion." This motion lists Binnie's last known address as: "5600 Swiss Avenue, Dallas, Tx. 75214" (the "Swiss Avenue address"). The motion states that a copy of the motion was delivered to Binnie and that she had been notified in writing of her right to object. On the same day, the trial court granted Henderson's motion to withdraw. Thereafter, no attorney was ever formally substituted for Henderson.

Gardner stated that she is the district clerk and that notice was sent to Binnie of the hearing on the motion for judgment and of the judgment itself to two different addresses in the clerk's file: (1) the Swiss Avenue address provided by Henderson; and (2) 5000 Reiger Ave., Dallas, Texas 75214. Gardner explained that the notices sent to Binnie at the Swiss Avenue address were returned undeliverable. However, the notices sent to 5000 Reiger Ave., Dallas, Texas 75214 were not returned. Garner further stated that she mailed copies of these documents to Ray, who was the "Plaintiff's attorney of record."

Binnie submitted an affidavit stating that she had, in fact, lived at 5600 Swiss Avenue in Dallas from Spring of 2004 to October 2005. She claimed that she never resided at 5000 Reiger Avenue in Dallas, but instead, her address had been 5018 Reiger Avenue, Dallas from October 2005 to September 2005. Binnie stated that she never provided the DeWitt County District Clerk with her address on Reiger Avenue, and she stated that she had "no idea" why Henderson provided the clerk with the Swiss Avenue address in May of 2006 because she had not lived at that address since September 2005. Binnie testified that she filed a change of address form with the United States Postal Service when she moved from Swiss Avenue to Reiger Avenue and again when she moved from Reiger Avenue to Scotland. Binnie admitted that she received some mail that was forwarded from her Reiger address, but she did not receive the notices sent by the district clerk.

8

Furthermore, Binnie stated that she testified at the trial of the case and stated on the record that she had moved to Scotland, United Kingdom.[6] She stated that at trial, her husband gave the trial judge his business card with their residence in Scotland listed on the card. She claimed she had "no reason to think that either the 267th District Court . . . or the District Clerk . . . did not have my current address."

Nevertheless, Binnie argued that she reasonably believed she was represented by Ray and that Ray was pursuing postjudgment and appellate relief on her behalf. Binnie claimed that she first became aware of the judgment on June 12, 2008, when she was served at her residence in Scotland with written notice of an action in Scotland to register the final judgment for collection purposes. Binnie further testified that she believed that Ray had been representing her during the trial and for the purposes of appealing any judgment rendered:

> I had contact by email and by telephone with Ms. Ray following the trial that resulted in this judgment. I believed Melissa Ray was my lawyer as well as the lawyer representing the [Trust] during the trial of the case . . . .
>
> It was always my intention to pursue any and all available remedies after the trial, and I sent Melissa Ray several emails inquiring about an appeal, as it was my belief and understanding that Ms. Melissa Ray was representing me, in my individual capacity, and not just as a Trustee of the [Trust], during the trial of the case in October 2007, and that she continued that representation after the end of the trial. The only conversation that I had with Melissa Ray immediately after the jury verdict was read, before I left Cuero, Texas, was to the effect that she would have to fix the result by appeal. We never had any conversation about deadlines, dates, or about a signed written judgment. . . . My husband mailed her a check for $4,000.00 in November of 2007, which I understood to be payment for the money she had requested in a telephone conversation and an email at the end of November of 2007. It was my understanding at the end of November of 2007 that Melissa Ray, who I believed to be my lawyer, was working on a motion for new trial and an appeal of the result in the trial . . . . I did not

---

[6] This trial transcript is not in the appellate record, but Coyle does not dispute that Binnie testified to these facts at trial.

receive any communications from Melissa Ray after November 30, 2007, and neither did my husband, although he emailed her several times, including asking her about why she had not cashed the check he mailed her in November 2007. It was, however, not unusual for Melissa Ray not to keep me informed about legal work she was doing. In fact, it had been her pattern going back for at least the two previous years. . . .

Because Binnie had experienced long periods of time without contact from Ray, she testified she was not alarmed when she did not hear from Ray in December of 2007 and January 2008, although she was "certainly irritated when [she] kept trying to contact her in January of 2008, without success." Eventually, because of her inability to contact Ray, Binnie contacted Allen, who then tried to contact Ray. He was likewise unsuccessful. Apparently, Binnie then retained other counsel in June 2008 after she was served with the papers in Scotland seeking registration of the judgment.

Binnie's husband stated that he attended the trial of the case in October 2007. He testified that after the adverse jury verdict, he understood that Ray would be taking an appeal and sent her a check in late November of 2007, which he "specifically stated in writing was for her continued work on the case that was tried in Cuero in October 2007." He explained that he understood from communications he had with Ray that she was filing a motion for new trial, and he sent her emails asking when the new trial would be held. He stopped hearing from Ray in December of 2007. In January of 2008, he started emailing Ray regularly and specifically inquired as to why she had not cashed the check. He received no response from Ray in January and February of 2008.

Ray testified in her deposition that she did not represent Binnie in the October 2007 trial but only represented the Trust. Ray testified that she communicated with Binnie in November of 2007, in her capacity as the Trust's attorney, and notified Binnie that there would be a hearing on November 5, 2007 on Coyle's motion for entry of judgment. Ray

claimed that at that time, she told Binnie that "if she needed to retain counsel in her own capacity and that if she would like to hire me, that she could, and I told her what my fees would be." Ray claimed that she spoke to one of the other trustees of the Trust, a person named Lynea, who claimed to have spoken to Binnie. Lynae instructed Ray not to attend the hearing on the motion for judgment because Lynae had spoken to Binnie. Ray claimed that Lynae told her that Binnie "had gotten what she had gotten and that they had already washed their hands of it." Ray testified that she told Binnie that she was not going to attend the motion for judgment hearing and the reasons why. Ray testified that she then notified Binnie that a judgment had been rendered and offered to file a motion for new trial on her behalf.

## C. Analysis

Binnie argues that her failure to file postjudgment motions or an appeal was not mixed with any negligence of her own because she reasonably believed that Ray was representing her in her individual capacity and that Ray was pursuing postjudgment and appellate relief from the judgment. Binnie claims that she did not know that Ray had not filed a postjudgment motion or an appeal and that she could not have sought a remedy under Texas Rule of Civil Procedure 306a because she learned of the judgment more than ninety days after its entry. *See* TEX. R. CIV. P. 306a(4). We disagree that these allegations show that Binnie was neither negligent nor did not share any fault for her failure to file postjudgment motions or an appeal.

"When the final judgment or other appealable order is signed, the clerk of the court shall immediately give notice to the parties or their attorneys of record by first-class mail advising that the judgment or order was signed." *Id.* R. 306a(3). Parties are required to

keep the clerk of the court informed of their current address. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 30.015(a), (d) (Vernon 2008). On May 11, 2006, Henderson, who was representing Binnie, filed an "Agreed Motion to Withdraw," stating that Binnie "[was] not opposed to the filing of this motion." This motion listed Binnie's last known address as the Swiss Avenue address. Binnie does not dispute that she received a copy of this motion, which contained an incorrect address, although she claimed in her affidavit that she had no idea why Henderson provided that address because she had not lived at the Swiss Avenue address for some time. Binnie also does not dispute that she did not take any steps to correct this action by either contacting Henderson or the district clerk to provide the correct address. Henderson was still Binnie's counsel at the time the motion to withdraw was filed, and his actions are imputed to her; thus, it was Binnie's negligence that resulted in the district clerk having an incorrect address. *See In re Nat'l Unity Ins. Co.*, 963 S.W.2d at 878-79; *Nichols*, 908 S.W.2d at 8. Although Binnie claims that she testified at the trial that she resided in Scotland and that her husband gave "the trial judge" his business card listing that address, Texas Civil Practice and Remedies Code section 30.015 requires parties to provide that information to the district clerk in writing, not to the trial judge during the course of trial or through testimony at trial. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 30.015(a), (d).

Binnie also does not dispute that after Henderson withdrew, no attorney was ever formally substituted in his place. She does not dispute that she was aware of this fact, although she claims she believed that Ray represented her. Nevertheless, we hold that Binnie was not without fault in ensuring that Ray was actually her attorney and that she was pursuing postjudgment or appellate remedies.

12

Texas Rule of Civil Procedure 306a(4) provides that:

[i]f within twenty days after the judgment or other appealable order is signed, a party adversely affected by it or his attorney has neither received the notice required by paragraph (3) of this rule nor acquired actual knowledge of the order, then with respect to that party all the periods mentioned in paragraph (1) shall begin on the date that such party or his attorney received such notice or acquired actual knowledge of the signing, whichever occurred first, but in no event shall such periods begin more than ninety days after the original judgment or other appealable order was signed.

TEX. R. CIV. P. 306a(4). If a party does not receive notice of the judgment within the time frame set forth in rule 306a(4), the party can file a motion to extend the deadlines to file postjudgment motions or to seek appellate relief. *Id.* R. 306a(5).

The judgment was signed on November 5, 2007. The deadline to file a rule 306a(5) motion would have expired ninety days later, or on Monday, February 4, 2008. *See id.* R. 306a(4); *id.* R. 4. Binnie and her husband both testified that they mailed Ray a check in November to retain her as Binnie's individual attorney. Binnie's husband testified that in January of 2008, he started emailing Ray regularly and specifically inquired as to why she had not cashed the check. He received no response from Ray in January.

Binnie did not take any steps to determine whether a judgment had been rendered against her or whether any action had been taken by Ray, despite possessing the following knowledge: (1) her prior attorney had not provided the clerk with the proper address; (2) no attorney had formally substituted in as her attorney; (3) a jury had rendered a verdict against her in November of 2007; (4) Ray had not cashed a check for her services to retain her as Binnie's individual counsel; and (5) Ray was not responding to communications. Had Binnie taken further steps in January when her husband began inquiring as to why Ray had not cashed the check and had received no response, Binnie could have filed a rule 306(a)(5) motion to extend the deadlines to seek relief. Under these circumstances,

13

we hold that Binnie has failed to produce evidence that her failure to file postjudgment motions or an appeal was unmixed with any fault or negligence of her own.  Accordingly, we overrule Binnie's issue on appeal.

## IV. CONCLUSION

Because Binnie failed to produce evidence in support of an essential element of her bill of review, we affirm the trial court's summary judgment.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
23rd day of November, 2010.

14