**Reversed and Remanded and Majority and Dissenting Opinions filed July 28, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00208-CV

---

### LETICIA LOYA, Appellant

### V.

### MIGUEL ANGEL LOYA, Appellee

---

**On Appeal from the 257th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-32502**

---

# DISSENTING OPINION

Miguel and Leticia signed a mediated settlement agreement (MSA) regarding their divorce, and based on this agreement, the trial court rendered a divorce decree. Under their agreement, Miguel's future earnings and income were partitioned to Miguel. Nine months after the trial court rendered the divorce decree, Miguel received a bonus from his employer. Leticia petitioned for post-divorce division of community property, seeking division of the bonus, which

Leticia contends is community property not divided in the divorce decree. She took the position that despite the terms of the agreement, the parties had not partitioned, divided, or allocated the bonus to either party.

Miguel filed a summary-judgment motion asserting Leticia's claim fails as a matter of law because, among other things, to the extent the bonus or any part of it was community property, it was partitioned to Miguel under the parties' agreement. The majority concludes that the bonus was not partitioned in the agreement because the bonus constitutes "earnings prior to the execution of the MSA." But, under the unambiguous language of the agreement, Miguel's bonus is encompassed by the provision partitioning future earnings and income to Miguel. For this reason, the agreement partitioned the bonus to Miguel. It belongs to him. The trial court properly granted summary judgment.

### The Agreement's "Future Earnings and Income" Provision

The agreement contains a detailed list of the parties' marital property and divides that property between them. The list does not specifically refer to future bonuses, but the parties considered and partitioned "future earnings and income." Their agreement includes the following provision:

> All future income of a party and/or from any property herein awarded to a party is partitioned to the person to whom the property is awarded. **All future earnings from each party are partitioned to the person providing the services giving rise to the earnings.** These partitions are to be effective pursuant to Section 4.102 of the Texas Family Code, and in this respect, each party waives further disclosure of property and debts of the other party.[1]

The agreement requires the parties to submit "(a) draft disputes, (b) issues regarding the interpretation of this Mediated Settlement Agreement, and (c) issues

---

[1] Emphasis added.

2

regarding the intent of the parties" to binding arbitration.[2]   While drafting their proposed agreed divorce decree, the parties disagreed about the language of the "future earnings" provision and arbitrated their drafting dispute.   The arbitrator instructed the parties to include following language:

> All future income and earnings are partitioned as of June 13, 2010[,] however[,] for tax purposes the partition of income for 2010, is as of Jan. 1, 2010. . . . If there is undisclosed property that occurred in this period of January 1, 2010 through June 13, 2010, that will have to be dealt with whether as undisclosed property or otherwise.

Leticia asserts that the agreement's  "future earnings" provision does not address Miguel's March 2011 bonus, and that the arbitrator's determination confirms as much.   Miguel asserts that the "future earnings" provision encompasses the March 2011 bonus and the arbitrator's determination confirms the bonus was partitioned to him.

### *Interpretation of the Provision*

A mediated settlement agreement that meets certain statutory formalities is binding on the parties and requires the rendition of a divorce decree that adopts the

---

[2] Leticia argues the arbitrator determined Miguel's bonus was not divided.  But, the arbitrator ruled that all future income and earnings are partitioned as of June 13, 2010, and noted that if undisclosed property "occurred" between January 2010 and June 13, 2010, the undisclosed property would need to be "dealt with."  The arbitrator did not determine whether the bonus constituted "future income and earnings," nor did the arbitrator state the bonus was undisclosed property on June 13, 2010.  Miguel asserts that he had no right to the bonus in June 2010, and therefore no obligation to disclose it.  Miguel also argues that even if he were required to disclose the possibility of a bonus, Leticia was aware of it.  Presuming for the sake of argument that Miguel was required to disclose the possibility of a 2011 bonus, Miguel complied with this requirement.  Indeed, Leticia had been married to Miguel for twenty-eight years and Miguel regularly had received a bonus in the spring for the past eighteen years.  Miguel's 2010 bonus was included in Leticia's portion of the community estate.  Leticia was aware of the possibility that Miguel's future income could include a bonus as in prior years. *See Torres v. Torres*, No. 14-12-00436-CV, 2013 WL 776278, at *2 (Tex. App.—Houston [14th Dist.] Feb. 28, 2013, no pet.); *Boaz v. Boaz*, 221 S.W.3d 126, 130 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  And, the parties addressed partition of any future bonus in the "future income and earnings" provision of their agreement.

3

parties' agreement.[3] Settlement agreements are subject to the rules of contract construction.[4] In construing contracts, the court's primary concern is to ascertain and give effect to the intentions of the parties as expressed in the contract.[5] To ascertain the parties' true intentions, the court examines the entire agreement in an effort to harmonize and give effect to all provisions so that none will be rendered meaningless.[6] Whether a contract is ambiguous is a question of law for the court.[7] A contract is ambiguous if its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation.[8] But, when a written contract is worded so that it can be given a certain or definite legal meaning or interpretation, it is unambiguous, and the court construes it as a matter of law.[9] The court cannot rewrite the contract or add to its language under the guise of interpretation.[10] Rather, the court must enforce the contract as written.[11]

The agreement partitions "future income and earnings" to Miguel. The agreement does not define the phrase or either of its components. To determine whether the partition includes the March 2011 bonus, we must look to the plain meaning of the language.[12] According to Black's Law Dictionary, "income" is

---

[3] Tex. Fam. Code Ann. § 6.602(b)-(c) (West, Westlaw through 2013 3d C.S.); *Milner v. Milner*, 361 S.W.3d 615, 617 (Tex. 2012).

[4] *In re Clayton*, No.14-10-00193-CV, 2010 WL 3294322, at *4 (Tex. App.—Houston [14th Dist.] Aug. 11, 2010, no pet.) (mem. op.).

[5] *Kelley Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998).

[6] *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999).

[7] *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

[8] *Id.*

[9] *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).

[10] *See id.* at 162.

[11] *See Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex. 1965).

[12] *See Jacobs v. Jacobs*, No. 14-12-00755-CV, 2013 WL 3968462, at *2 (Tex. App.— Houston [14th Dist.] Aug. 1, 2013, no pet.) (mem. op.); *Toler v. Sanders*, 371 S.W.3d 477, 480

"the return in money from one's business, labor, or capital invested; gains, profits, salary, wages, etc."[13] "Income" is also defined as "the true increase in amount of wealth which comes to a person during a stated period of time."[14] Section 101.011 of the Texas Family Code defines "earnings" broadly as "a payment to or due to an individual, regardless of source and how denominated."[15] Section 101.011 notes that the term includes "wages, salary, compensation received as an independent contractor, overtime pay, severance pay, commission, bonus, and interest income."[16] Similarly, Black's Law Dictionary defines "earnings" as "income" and the dictionary notes that it is not limited to wages.[17] The plain meanings of the terms "income" and "earnings" encompass Miguel's March 2011 bonus.

In negotiating the community property split in June 2010, the parties allocated to Miguel all future earnings and income. Miguel received the March 2011 bonus after the execution of the MSA. Thus, under the clear terms of the agreement, the March 2011 bonus is allocated to Miguel under the "future earnings" provision.

The majority applies *Sprague v. Sprague* and determines that a portion of the bonus is community property subject to division.[18] Even if a portion of the bonus could be characterized as community property, Leticia and Miguel partitioned this community property to Miguel in their agreement when they allocated all future earnings and income to Miguel. The majority states that the March 2011 bonus

---

(Tex. App.—Houston [1st Dist.] 2012, no pet.).

[13] BLACK'S LAW DICTIONARY 763 (6th ed.1990).

[14] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1143 (3d ed. 1993).

[15] Tex. Fam. Code. Ann. § 101.011 (West, Westlaw through 2015).

[16] *Id.*

[17] BLACK'S LAW DICTIONARY 509 (6th ed. 1990).

[18] *See* 363 S.W.3d 788, 801–02 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

was based "in part on work [Miguel] performed before the parties divorced."[19] The majority then concludes that the bonus was "earned, at least in part, based on services [Miguel] provided during the parties' marriage."[20] Thus, the majority reasons that a portion of the March 2011 bonus was past "earnings" or "income" not covered by the parties' partition agreement.[21]

In interpreting the agreement, the court is to give effect to the plain meaning of the words.[22] "Future" is defined as "that is still to be," and "existing or occurring at a later time."[23] The parties divorced in June 2010. Miguel's employer awarded the bonus in March 2011. At the time the parties divorced, the bonus did not exist. Even if Miguel's employer considered work Miguel performed before June 2010 in awarding the March 2011 bonus, none of the bonus came into existence until after June 2010. Therefore, under the wording of the agreement, the entire bonus fell within the provision relating to future earnings or income and was partitioned to Miguel.

### *Conclusion*

In their agreement, the parties partitioned all of the March 2011 bonus to Miguel. Miguel sought summary judgment on the ground that he was entitled to the entire bonus because the parties partitioned it all to him. The trial court did not err in granting Miguel's summary-judgment motion. Because the majority reaches

---

[19] *See ante* at p. 10.

[20] *See ante* at p. 10 (emphasis omitted). Miguel provided evidence that his bonus was discretionary with his employer, meaning even if work Miguel performed before the divorce influenced the determination to pay Miguel a bonus, he had not earned the bonus until his employer awarded it.

[21] *See ante* at p. 8.

[22] *See Jacobs*, 2013 WL 3968462, at *2; *Toler*, 371 S.W.3d at 480.

[23] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 926 (3d ed. 1993).

the opposite conclusion, I respectfully dissent.

/s/          Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Boyce and McCally (McCally, J. majority).