**Affirmed and Majority and Dissenting Opinions filed July 31, 2014.**



In The

# Fourteenth Court of Appeals

### NO. 14-13-00383-CV

### SIMULIS, L.L.C., Appellant

### V.

### GENERAL ELECTRIC CAPITAL CORPORATION, Appellee

**On Appeal from the 270th District Court
Harris County, Texas
Trial Court Cause No. 2005-37556**

## M A J O R I T Y   O P I N I O N

Simulis, L.L.C. challenges two orders on appeal: (1) a "Final Summary Judgment" signed on January 29, 2013, in which the trial court directed that Simulis take nothing on its counterclaims against General Electric Capital Corp. ("GE Capital"); and (2) an "Order Enforcing Jury Waiver Agreement" signed on February 11, 2013. Simulis contends that the trial court erred in signing the first order and lacked subject matter jurisdiction to sign the second order. We affirm

the trial court's grant of summary judgment.

## BACKGROUND

This is the fourth appeal arising from a decade-long commercial dispute between GE Capital and software company Simulis in connection with a failed software marketing effort.

Two prior appeals addressed the disposition of Simulis's claims against GE Capital. *See Simulis, L.L.C. v. General Electric Capital Corp.*, 392 S.W.3d 729 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) ("*Simulis* II"); *Simulis, L.L.C. v. General Electric Corp.*, No. 14-06-00701-CV, 2008 WL 1747483 (Tex. App.— Houston [14th Dist.] Apr. 17, 2008, no pet.) ("*Simulis* I"). The third appeal addressed the propriety of a post-judgment garnishment obtained by GE Capital in connection with its claim against Simulis to collect on a promissory note. *Simulis, L.L.C. v. G.E. Capital Corp.*, 276 S.W.3d 109 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

Simulis's claims are grounded on allegations that GE Capital, which provides commercial financial services, approached Simulis in 2000 about forming a "strategic alliance" to market Simulis's training software to other companies and entities associated with General Electric.

Simulis is a limited liability company formed under Delaware law. GE Capital invested $5 million in Simulis in late 2000 in exchange for a 20 percent ownership interest. Under the "Second Amended and Restated Limited Liability Company Agreement of Simulis, L.L.C.," effective as of September 29, 2000, GE Capital became a "member" of the limited liability company and held 20 percent of the "units" in Simulis. *See* 6 Del. C. §§ 18-101(11), 18-303. GE Capital loaned an additional $100,000 to Simulis in 2002.

According to Simulis's live pleading, the "strategic alliance" between GE Capital and Simulis contemplated that (1) "G.E. companies would have access to Simulis software and development techniques;" and (2) "Simulis' association with G.E. would ensure even greater credibility in the marketplace, as well as access to additional markets and business relationships." GE Capital allegedly told Simulis to "'staff up' in order to meet the product needs of G.E.'s industrial divisions;" maintain "an additional office;" meet "minimum employment targets;" and create "working mock-ups of the products that would be supplied."

Simulis contends that GE Capital represented "these extraordinary expenditures would be accompanied by G.E. company investments in Simulis products." Simulis alleges: "Despite the promises and representations by G.E. Capital, no G.E. company ever purchased a single product from Simulis." It continues: "Ultimately, Simulis incurred millions of dollars in additional costs and expenses in reliance on G.E. Capital's representations that it had the ability to provide business from its G.E. sister divisions." Simulis further alleges: ". . . G.E. Capital did not have the ability to secure G.E. business for Simulis, and it never did. And it was G.E. Capital's representation that it did have this ability, or its failure to tell Simulis the truth about the matter, that caused damage to Simulis."

## PROCEDURAL HISTORY

The legal fight began when GE Capital sued Simulis in 2005 for breach of contract and asserted a sworn account claim after Simulis defaulted on a promissory note in connection with GE Capital's $100,000 loan.

GE Capital moved for summary judgment on its claims. Simulis did not deny liability; instead, Simulis asserted an offset defense and counterclaims against GE Capital for breach of contract, promissory estoppel, and quantum meruit. After the trial court granted an interlocutory summary judgment in favor of GE Capital

3

on the note, GE Capital filed a combined no-evidence and traditional motion for summary judgment on Simulis's counterclaims and defenses. The trial court granted summary judgment, and Simulis pursued the first appeal in this case.

In its first appeal, Simulis challenged only the trial court's grant of summary judgment with respect to the counterclaims for promissory estoppel and quantum meruit; Simulis did not challenge summary judgment with respect to the underlying promissory note, its offset defense, or its breach of contract claim. *Simulis* I, 2008 WL 1747483, at \*1.

This court affirmed the grant of summary judgment on Simulis's counterclaim for promissory estoppel. *Id.* at \*2. "While a specific, detailed promise might support a promissory estoppel claim, relying on a vague, indefinite promise of future business is unreasonable as a matter of law." *Id.* (citations omitted).

"Here, Simulis presented evidence that GE promised that Simulis would 'receive business' and that the volume of business would be a 'company maker' for Simulis." *Id.* "The parties never discussed or negotiated the specific pieces of business, the price, when and for how long such transactions would occur, or any other terms." *Id.* "Relying on such promises is unreasonable as a matter of law and cannot be the basis for a promissory estoppel claim." *Id.* This court distinguished cases relied upon by Simulis because they "all involve much more definite promises that GE made here." *Id.* at \*2 n.1 (citing *Preload Tech., Inc. v. A.B. & J. Constr. Co.*, 696 F.2d 1080, 1082-83, 1085 (5th Cir. 1983); *CWTM Corp. v. AM Gen. LLC*, No. Civ. A. H-04-2857, 2005 WL 1923605, at \*1 (S.D. Tex. Aug. 10, 2005); *'Moore' Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 937-38 (Tex. 1972); *Wheeler v. White*, 398 S.W.2d 93, 94-95 (Tex. 1965); *Frost Crushed Stone Co. v. Odell Geer Constr. Co.*, 110 S.W.3d 41, 45 (Tex. App.—

Waco 2002, no pet.)).

This court reversed the grant of summary judgment on Simulis's counterclaim for quantum meruit after concluding that the evidence raised a fact issue with respect to whether GE Capital received valuable services from Simulis. *Id*. at *3. Accordingly, this court reversed and remanded "for further proceedings consistent with this opinion." *Id*.

Simulis did not pursue its quantum meruit claim on remand. *Simulis* II, 392 S.W.3d at 732. Instead, Simulis amended its pleadings to add more than half a dozen new causes of action. *Id*.

GE Capital filed special exceptions in response to the amended pleadings. Among other things, GE Capital contended that Simulis violated this court's *Simulis* I mandate by adding new causes of action on remand. *Id*. The trial court granted GE Capital's special exceptions and ordered Simulis to replead. *Id*.

After Simulis filed another amended pleading that still contained new causes of action, GE Capital filed a motion to dismiss on grounds that Simulis had failed to comply with the trial court's order. The trial court signed another order, in which it required Simulis to file an amended petition asserting only a claim for quantum meruit. *Id*. Simulis again filed an amended pleading containing new causes of action. GE Capital again moved to dismiss based on a failure to comply with the trial court's order to replead and assert only a claim for quantum meruit. *Id*. The trial court granted GE Capital's motion and dismissed all of Simulis's claims with prejudice. *Id*. Simulis then pursued the second appeal in this case.

This court reversed. "Because our opinion and mandate did not include any language limiting Simulis to a quantum meruit claim only, Simulis was free to amend its pleadings to add new claims or parties, except as to those claims on

5

which we rendered summary judgment in GE's favor." *Id*. at 735. This court expressed no opinion on the merits of GE Capital's additional assertions that Simulis's newly added claims were foreclosed by res judicata, collateral estoppel, and law of the case based on the decision in *Simulis* I. *See Simulis* II, 392 S.W.3d at 735 n.7. This court again remanded "for proceedings consistent with this opinion." *Id*. at 736.

After the second remand, Simulis filed its fifth amended counterclaim. This is the live pleading for purposes of the current appeal.

Simulis's fifth amended counterclaim asserts claims based on (1) breach of fiduciary duty; (2) fraudulent misrepresentation; (3) fraud by nondisclosure; (4) negligent misrepresentation; (5) misappropriation of trade secrets; (6) gross negligence; and (7) exemplary damages.[1] Simulis also asserts its entitlement to attorneys' fees. GE Capital filed a traditional motion for summary judgment under Texas Rule of Civil Procedure 166a(c) on November 16, 2012. Simulis filed its response on December 7, 2012. The trial court signed a "Final Summary Judgment" on January 25, 2013, in which it dismissed all of Simulis's counterclaims with prejudice and stated that "Simulis shall take nothing on its claims."

On January 22, 2013, GE Capital filed a separate document entitled "GE Capital's Motion to Enforce Jury Waiver Agreement." This filing asserted that the trial court should dismiss all of Simulis's counterclaims based on the then-pending motion for summary judgment; in the alternative, GE Capital contended that the case should be tried to the bench if it went forward because Simulis signed a jury

---

[1] Under the heading "Theories of Recovery" in its fifth amended counterclaim, Simulis also includes a separate paragraph designated as "Detrimental Reliance." This paragraph does not appear to assert a separate cause of action; rather, it appears to be an elaboration of the reliance element of other causes of action included as "Theories of Recovery."

waiver agreement. Simulis filed no response to this motion. The trial court signed an order granting GE Capital's motion on February 11, 2013.

Simulis filed a motion for new trial on February 26, 2013. The Clerk's Record contains no order expressly overruling this motion. Simulis timely filed its notice of appeal on April 25, 2013.

## STANDARD OF REVIEW

We review the grant of summary judgment *de novo*. *City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 645 (Tex. 2013). The movant who seeks a traditional summary judgment under Rule 166a(c) must show that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). To be entitled to traditional summary judgment, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Once the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

## ANALYSIS

### I.    Summary Judgment

GE Capital moved for traditional summary judgment on the following grounds.

1. Any justifiable reliance on Simulis's part is foreclosed based on the evidence contained in the summary judgment record, which is fatal to Simulis's claims for fraudulent misrepresentation, fraud by

7

nondisclosure, negligent misrepresentation, and breach of fiduciary duty.

2. Any justifiable reliance on Simulis's part is foreclosed by law of the case in light of *Simulis* I, which is fatal to Simulis's claims for fraudulent misrepresentation, fraud by nondisclosure, negligent misrepresentation, and breach of fiduciary duty.

3. Simulis's claim for misappropriation of trade secrets pertains only to General Electric entities other than GE Capital because "Simulis does not complain that GE Capital itself misused the software technology."

4. GE Capital did not owe a fiduciary duty to Simulis and did not breach such a duty.

5. Simulis did not rely in fact on GE Capital's alleged representations because the sums Simulis allegedly was induced to spend based on promises of future business came entirely from GE Capital's own $5 million investment in Simulis.

6. Any alleged expectancy damages are speculative.

The trial court's January 25, 2013 "Final Summary Judgment" dismissed all claims asserted in the fifth amended complaint without specifying particular grounds for doing so. We resolve this appeal based on grounds (1) and (4) raised in GE Capital's motion for summary judgment; these grounds focus on the inability to establish justifiable reliance on this record with respect to fraud and negligent misrepresentation, and on the absence of a fiduciary duty running from GE Capital to Simulis.

Simulis contends that summary judgment was erroneous with respect to its causes of action for fraudulent misrepresentation, fraud by nondisclosure, negligent

8

misrepresentation, and breach of fiduciary duty. Simulis contends on appeal that the trial court erred in granting summary judgment for the following reasons.

1. The reliance-related evidence before the trial court in the latest round of summary judgment filings differs from the reliance-related evidence submitted in connection with the first summary judgment motion that resulted in the *Simulis* I opinion. The new evidence suffices to raise a fact issue on reliance.

2. GE Capital cannot rely on "unanswered interrogatory responses" to satisfy its traditional summary judgment burden under Rule 166a(c), nor can it rely on an interrogatory response by Simulis that refers to unspecified documents produced by Simulis in response to requests for production.

3. Simulis raised a fact issue by submitting evidence showing that GE Capital's misrepresentations "were more than vague statements of opinion," and that these misrepresentations "identified specific business, at specific values, and upon discussed circumstances."

4. A claim for breach of fiduciary duty does not contain a reliance element.

5. The law of the case doctrine does not foreclose Simulis's claims for fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, and breach of fiduciary duty.

6. GE Capital owed a fiduciary duty to Simulis.

7. The summary judgment record establishes that Simulis spent its financial and business capital in reliance on GE Capital's misstatements and promises, resulting in the destruction of all

investments made by all members in the company.

In light of the resolution below, we do not reach grounds (4), (5), and (7) raised by Simulis in opposition to summary judgment. Simulis does not address on appeal its claims for misappropriation of trade secrets, gross negligence, exemplary damages, and attorneys' fees, which also were encompassed in the trial court's final summary judgment order, and it does not contend that the trial court erred in granting summary judgment on these claims. Therefore, we do not address whether the trial court erred when it dismissed the claims for misappropriation of trade secrets, gross negligence, exemplary damages, and attorneys' fees via summary judgment.

## A. Fraud and Negligent Misrepresentation

According to Simulis's live pleading, its fraudulent misrepresentation claim rests on affirmative statements that (1) "it was necessary for Simulis to expend funds on additional personnel and office locations so that Simulis would have the infrastructure in place to adequately service GE industrial contracts;" (2) GE Capital "was in the process of arranging for its industrial divisions to purchase Simulis products;" and (3) GE Capital "had special knowledge regarding these matters." The fraud by nondisclosure claim rests on an alleged failure to disclose that (1) GE Capital "did not, in fact, have the ability to deliver business from its sister divisions;" and (2) "the expenditures and concessions demanded did not insure participation from G.E. Capital's industrial divisions." Simulis's live pleading does not identify the nature of the alleged negligent misrepresentations.

Reliance is an element of Simulis's claims for fraudulent misrepresentation, fraud by nondisclosure, and negligent misrepresentation; the parties do not contend otherwise. *See, e.g.*, *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (fraudulent misrepresentation);

10

*Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997) (fraud by nondisclosure); and *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997) (negligent misrepresentation). Fraud and negligent misrepresentation claims share this reliance element in common with promissory estoppel. *Ortiz v. Collins*, 203 S.W.3d 414, 421 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (citing *Beal Bank, S.S.B. v. Schleider*, 124 S.W.3d 640, 647-54 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)). Regardless of other differences among claims for promissory estoppel, fraud, and negligent misrepresentation,[2] a common principle applies to the shared reliance element: "This reliance must be reasonable and justified." *Ortiz*, 203 S.W.3d at 421.

"[R]elying on a vague, indefinite promise of future business is unreasonable as a matter of law." *Simulis* I, 2008 WL 1747483, at *2 (citing *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141-42 (Tex. App.—Houston [14th Dist.] 1999, pet. denied); *Gilmartin v. KVTV-Channel 13*, 985 S.W.2d 553, 558-59 (Tex. App.— San Antonio 1998, no pet.); *Gilum v. Republic Health Corp.*, 778 S.W.2d 558, 570 (Tex. App.—Dallas 1989, no pet.)). This court concluded that the trial court properly granted summary judgment with respect to promissory estoppel because "Simulis presented evidence that GE promised that Simulis would 'receive business' and that the volume of business would be a 'company maker' for Simulis." *Simulis* I, 2008 WL 1747483, at *2. This court reasoned as follows: "Relying on such promises is unreasonable as a matter of law and cannot be the basis for a promissory estoppel claim" because "[t]he parties never discussed or negotiated the specific pieces of business, the price, when and for how long such

---

[2] *See, e.g., Allied Vista, Inc. v. Holt,* 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ("Significantly, the sort of 'false information' contemplated in a negligent misrepresentation case is a misstatement of *existing fact*, not a promise of future conduct.") (original emphasis) (citing *Airborne Freight Corp., Inc. v. C.R. Lee Enters., Inc.*, 847 S.W.2d 289, 294 (Tex. App.—El Paso 1992, writ denied)).

11

transactions would occur, or any other terms." *Id*.

GE Capital contends that the nature of the alleged representations at issue defeats the reliance elements of Simulis's later-added claims for fraud by misrepresentation, fraud by nondisclosure, and negligent misrepresentation. Simulis contends that GE Capital did not meet its initial burden as the summary judgment movant under Rule 166a(c).

We conclude that GE Capital satisfied its summary judgment burden under Rule 166a(c) by submitting the following reliance-related evidence with its summary judgment motion. Simulis did not object to this evidence in its summary judgment response.

- A copy of Simulis's September 2012 response to GE Capital's Interrogatory No. 1 asking Simulis to "quote and describe specifically each alleged misrepresentation of GE Capital, and for each identify the date, circumstances, and individuals involved." Simulis answered the interrogatory by responding that it "does not possess information sufficient to 'quote' employees of G.E. Capital beyond those documents produced in response to discovery." Simulis then stated, "Simulis can generally describe G.E. Capital's misrepresentations as follows: G.E. Capital told Simulis that it had special knowledge and abilities, including the ability to insure that various G.E. divisions would use Simulis as their simulation training provider, provided Simulis follow[ed] G.E. Capital's advice." Simulis's response continued: "G.E. Capital told Simulis personnel that, if Simulis dedicated its financial resources to obtaining G.E. division business, including the procurement of additional personnel, programming resources, and business presence, that this investment would be repaid

12

in the form of G.E. contracts."

- A copy of Simulis's September 2012 response to GE Capital's Interrogatory No. 3 asking Simulis to "describe as best as you can the alleged specific facts or information that GE Capital allegedly failed to disclose to you . . . ." Simulis answered the interrogatory by responding as follows: "At a point in the parties' relationship, G.E. Capital became aware that it did not have the level of influence that it had originally anticipated." Simulis's response continued: "Simulis does not know the date this occurred, nor could it, but at this time, G.E. Capital, as [a] Simulis board member, stock holder, and business partner, should have informed Simulis that it should not continue to rely on its initial representations as described in response to Interrogatory No. 1."

- A copy of an affidavit by Simulis founder and CEO Mark Winter signed on March 17, 2006. Among other things, Winter's 2006 affidavit asserted that personnel from General Electric and GE Capital made the following representations: (1) GE Capital's investment would "'make Simulis;'" (2) Simulis would be compensated for allowing GE Capital to purchase "a significant ownership interest" in Simulis by means of "GE hiring and using Simulis' technology solutions;" (3) Simulis's products "for training and competency assessment would be put into place in many or all operating divisions of GE;" (4) Simulis needed to "hire, equip and train staff of up to thirty (30) employees" to address General Electric's requirements; (5) GE Medical Systems "wanted Simulis to develop several specific training products for" GE Medical Systems; (6) Simulis needed to

13

"develop a simulated locomotive control system interface."

- A copy of an affidavit by Simulis co-founder and board chairman David Vosbein signed on September 29, 2005. Among other things, Vosbein's 2005 affidavit asserted that personnel from GE Capital made the following representations: (1) a strategic alliance between General Electric and Simulis would be a "company maker" for Simulis; (2) Simulis "would receive business from the industrial divisions" of General Electric; (3) a "large volume of work" was promised to Simulis; (4) GE Capital would "provide business" to Simulis, but "Simulis never received any business" as promised and represented.

The 2006 Winter and 2005 Vosbein affidavits demonstrate that justifiable reliance is foreclosed here because relying upon vague and indefinite promises of future business of the sort identified in those affidavits "is unreasonable as a matter of law." *Simulis* I, 2008 WL 1747483, at *2; *Allied Vista, Inc.*, 987 S.W.2d at 141-42.

We agree with GE Capital that reasonable reliance likewise is foreclosed as a matter of law based on Simulis's interrogatory responses referencing (1) representations that "various G.E. divisions would use Simulis as their simulation training provider;" (2) representations that Simulis's investments in personnel and resources "would be repaid in the form of G.E. contracts;" and (3) GE Capital's asserted failures to disclose that "Simulis . . . should not continue to rely on its initial representations as described in response to Interrogatory No. 1."

The representations regarding future business identified in response to Interrogatory No. 1 are no less vague, no less indefinite, and no more capable of being relied upon than those contained in the 2006 Winter and 2005 Vosbein

14

affidavits. Simulis's inability to rely on these vague and indefinite promises of future business also defeats its fraud by nondisclosure claim discussed in response to Interrogatory No. 3, which asserts that GE Capital should have disclosed the falsity of the promises identified in response to Interrogatory No. 1. *See Schlumberger Tech. Corp.*, 959 S.W.2d at 181 (inability to rely on asserted affirmative representations defeated accompanying fraudulent nondisclosure allegations that were "simply the converse of Schlumberger's affirmative misrepresentations").

We reject Simulis's contention that GE Capital could not rely upon Simulis's interrogatory responses as affirmative proof against Simulis in support of GE Capital's traditional motion for summary judgment under Rule 166a(c). *See* Tex. R. Civ. P. 197.3; *Yates v. Fisher*, 988 S.W.2d 730, 731 (Tex. 1998) (per curiam). Nothing in the contents of these responses, or in Simulis's generic reference to unspecified documents produced in discovery, forecloses their use in support of GE Capital's traditional motion for summary judgment. Simulis and the dissent stretch the Rule 166a(c) standard too far in contending this standard requires denial of a traditional summary judgment motion whenever evidence from a non-movant generally references unspecified documents. *See, e.g., Hendricks v. Thornton*, 973 S.W.2d 348, 361-62 (Tex. App.—Beaumont 1998, pet. denied) (affirming trial court's grant of Rule 166a(c) motion in favor of defendant because summary judgment record conclusively disproved reliance element of claims for fraud, negligent misrepresentation, aiding and abetting fraud, and breach of warranty; defendant obtained traditional summary judgment based on deposition excerpts in which plaintiffs referenced having received unspecified "papers,'" a "brochure or prospectus," a "folder," unspecified "'written materials,'" a "brochure and letter," and unspecified "written information."); *see also Bedrock Gen.*

15

*Contractors, Inc. v. Tex. Workers' Comp. Ins. Fund*, No. 03-00-00426-CV, 2001 WL 253594, at *7 (Tex. App.—Austin March 8, 2001, pet. denied) (not designated for publication); *Pennington v. Bennett*, 436 S.W.2d 182, 183 (Tex. Civ. App.—Dallas 1969, writ ref'd n.r.e.).

Even putting aside the interrogatory responses, GE Capital discharged its summary judgment burden under Rule 166a(c) by including the 2006 Winter and 2005 Vosbein affidavits as affirmative proof in support of its motion. The dissent's suggested limitation of the purposes for which the affidavits can be considered is unwarranted; GE Capital's motion for summary judgment states as follows without limitation: "This motion relies on the papers on file and the attached and accompanying exhibits." The "attached and accompanying exhibits" include the 2006 Winter and 2005 Vosbein affidavits.

Contrary to the dissent's contention, the "purpose the affidavits were intended to serve" by Simulis is irrelevant to the inquiry at the center of the current appeal. Presumably, Simulis intended these affidavits to serve the purpose of defeating GE Capital's prior request for summary judgment predicated on GE Capital's contention that reasonable reliance was foreclosed as a matter of law. If such an intent on the non-movant's part were to control whether summary judgment should be granted, then no summary judgment ever could be granted against the non-movant's wishes. The relevant consideration here is what the affidavits say with respect to representations during 2000-2001 that Simulis attributed to GE Capital, and Simulis's asserted reliance on those representations. The dissent identifies no defect in the substance of these affidavits. Simulis identifies no defect in form in affidavits that Simulis itself filed during an earlier stage of the proceedings. Both affidavits expressly address representations and reliance. The representations identified in these affidavits are not actionable. *See*

16

*Simulis* I, 2008 WL 1747483, at \*2; *Allied Vista, Inc.*, 987 S.W.2d at 141-42. The dissent does not contend that the 2000-2001 representations attributed to GE Capital in the 2006 Winter and 2005 Vosbein affidavits, or Simulis's claimed reliance as reflected in those affidavits, suffice to demonstrate a viable basis for reasonable reliance under Texas law. These affidavits satisfied the movant's burden under Rule 166a(c).

Simulis contends that it proffered new evidence in its summary judgment response sufficient to raise a fact issue for trial and forestall summary judgment with respect to fraudulent misrepresentation, fraud by nondisclosure, and negligent misrepresentation. Simulis's appellate brief lists nine items that it portrays as new, post-*Simulis* I evidence establishing "details of the circumstances of . . . the relationship between the parties, the specificity of G.E.'s representations, and the circumstances surrounding these representations."

Simulis further contends on appeal that it has proffered additional evidence of "specific business, at specific values" that was promised to it in the future based on (1) an affidavit signed by David Vosbein on December 6, 2012; (2) a chart entitled "Exhibit B – GE Opportunities" that appears to have been part of a larger presentation about the anticipated alliance between Simulis and General Electric; (3) an undated email entitled "GEMS – Simulis" written by Juan Corsillo of GE Capital and sent to Ron Carapezzi and Bob Stefanowski; (4) a November 9, 2000 email entitled "Simulis introductions to GE Capital Companies & Strategic GECC Customers" written by Juan Corsillo and sent to Ron Carapezzi, Bob Stefanowski, Dominic Cotugno; and (5) a document entitled "Simulis LLC Incentive Warrant Term Sheet" dated October 20, 2000. According to Simulis, these additional documents demonstrate that GE Capital "held Simulis out as its business partner;" identified "specific business, with specific values, and specific time frames, as

earmarked for Simulis;" told Simulis that "it needed to make certain expenditures . . . to meet the upcoming demand;" and "obtain a cut of . . . profits from the business it promised Simulis."

Individually and in concert, the additional documents identified by Simulis evidence nothing beyond "vague, indefinite promise[s] of future business" of the sort that foreclose reliance. *See Simulis* I, 2008 WL 1747483, at *2; *see also Allied Vista, Inc.*, 987 S.W.2d at 141 ("Significantly, the sort of 'false information' contemplated in a negligent misrepresentation case is a misstatement of *existing fact*, not a promise of future conduct.") (original emphasis); *Airborne Freight Corp.*, 847 S.W.2d at 295 ("[N]egligent misrepresentation is a cause of action recognized in lieu of a breach of contract claim, not usually available where a contract was actually in force between the parties.").

Significant portions of Vosbein's 2012 affidavit overlap with the contents of his 2005 affidavit and Winter's 2006 affidavit. Insofar as additional representations are addressed, Vosbein's 2012 affidavit states that Simulis was "excited to learn that G.E. Capital had specific ideas about how Simulis could work with and support the G.E. industrial divisions;" that G.E. Capital "held us out as partners;" that G.E. Capital said "we needed to expend a great deal of money in order to position ourselves as a G.E. vendor and strategic partner;" and that G.E. Capital said these expenditures were necessary "so that we would be adequately staffed to handle the volume of G.E. division business that would follow."

Contrary to Simulis's suggestion, Vosbein's 2012 affidavit does not demonstrate that particular business was "earmarked for Simulis." Nor is earmarking demonstrated by (1) a proposed internal memo to a "Preliminary Distribution List" of General Electric divisions and leaders from Juan Corsillo stating, "I would encourage you to allow [Simulis] . . . to spend an hour

18

introducing its suite of products and follow up as appropriate;" (2) a separate email from Corsillo recounting Simulis's unsuccessful efforts to enter into a contract with General Electric Medical Systems that stalled because the training manager "can't seem to get a decision from the division which has ordered the training;" (3) a presentation slide listing "GE Opportunities" that involved issuance of a Request for Proposal by two entities; or (4) a term sheet stating that Simulis will issue warrants to General Electric "[a]s an incentive for GE to use commercially reasonable efforts to recommend the use of Simulis's technology and services throughout the General Electric Company . . . ." This additional evidence touted by Simulis fails to identify actionable representations.

The remaining items listed in Simulis's brief address "the circumstances surrounding these representations" in an effort to show that Simulis's asserted reliance on them was reasonable. Because the representations themselves are not actionable due to their nature, the "circumstances surrounding" these non-actionable representations are immaterial.

Finally, we reject Simulis's suggestion that our decision in *Simulis* II forecloses summary judgment based on the absence of justifiable reliance. *Simulis* II addressed only a narrow appellate procedural issue concerning the scope of the remand effected in *Simulis* I, and whether that remand was broad enough to let Simulis amend its petition to add new causes of action. *Simulis* II neither addressed the merits of any specific causes of action nor determined whether any specific representations are actionable. *See Simulis* II, 392 S.W.3d at 735 n.7.

On this record, Simulis's claims for fraud by misrepresentation, fraud by nondisclosure, and negligent misrepresentation fail as a matter of law because the nature of the representations at issue means that reliance is foreclosed and "unreasonable as a matter of law." *See Simulis* I, 2008 WL 1747483, at *2; *Allied*

19

*Vista, Inc.*, 987 S.W.2d at 141-42.

## B. Breach of Fiduciary Duty

The parties agree that Simulis is a limited liability company (LLC) created pursuant to the Delaware Limited Liability Company Act, and that Delaware law governs Simulis's claim that GE Capital breached a fiduciary duty owed to Simulis. *See* Tex. Bus. Org. Code Ann. § 1.102 (Vernon 2012).

Under the "Second Amended and Restated Limited Liability Company Agreement of Simulis, L.L.C.," effective as of September 29, 2000, GE Capital was a "member" of the LLC holding 20 percent of its units. *See* 6 Del. C. §§ 18-101(11), 18-303. The September 2000 agreement vested management power in a four-person "Board of Directors." *See id*. § 18-101(1), 18-402.

In its live pleading, Simulis alleges that GE Capital owes a fiduciary duty to the LLC as a "member" of the LLC; Simulis further alleges that GE Capital acted "through its agents and employees" to breach this fiduciary duty.

GE Capital contends that summary judgment is mandated because it owed no fiduciary duty to the LLC under Delaware law. According to GE Capital, the board's structure and composition means GE Capital was not a manager of the LLC; "[t]hus, GE Capital had contractual investor rights as a member, but no authority to bind or manage the company." GE Capital further contends that it was not a controlling member of the LLC because it owned only 20 percent of the LLC and appointed only one of four board members. Relying on *Kuroda v. SPJS Holdings, LLC*, 2010 WL 925853, at *7 (Del. Ch. Mar. 16, 2010), GE Capital contends that it owed no fiduciary duty to Simulis solely as a "member" of the LLC because GE Capital was neither a manager of the LLC nor a controlling member. *See id.* n.28 (noting absence of statutory or case law authority "that

20

imposes fiduciary duties on non-managing or non-controlling members of an LLC.").

Simulis responds by arguing that GE Capital "was a member of Simulis' board of directors, and, therefore, a member-manager of Simulis, LLC." According to Simulis, GE Capital itself "was a member of Simulis's board of directors" – and thereby owed a fiduciary duty to the LLC under Delaware law – because the September 2000 agreement appoints a GE Capital officer, Robert Stefanowski, as a member of the LLC's board.

Simulis cannot predicate a viable claim on its contention that GE Capital owed a fiduciary duty to Simulis as a member-manager of the LLC solely by virtue of Stefanowski's position on the board of directors. Delaware case law has rejected a contention that "whenever a director is affiliated with a significant stockholder, that stockholder automatically would acquire the fiduciary obligations of the director by reason of that affiliation alone." *Emerson Radio Corp. v. Int'l Jensen Inc.*, 1996 WL 483086, at *20 n.18 (Del. Ch. August 20, 1996), *appeal denied*, 683 A.2d 58 (Del. 1996). "The notion that a stockholder could become a fiduciary by attribution (analogous to the result under the tort doctrine of *respondeat superior*) would work an unprecedented, revolutionary change in our law, and would give investors in a corporation reason for second thoughts about seeking representation on the corporation's board of directors." *Id*.; *see also US Airways Group, Inc. v. British Airways PLC*, 989 F. Supp. 482, 494 (S.D.N.Y.) ("In practice, the imposition of respondeat superior liability on a corporation for breach of fiduciary duty by its directors on the board of another corporation would completely undermine Delaware corporate law, which limits such fiduciary duty to majority and controlling shareholders. The general tort law theory of respondeat superior cannot be used as [a] means of circumventing clear limitations imposed

by Delaware corporate law.")  This reasoning applies in this context as well to foreclose Simulis's breach of fiduciary duty claim against GE Capital as a matter of law.

## II.    Jury Waiver

Simulis contends that the trial court lacked subject matter jurisdiction under Texas Rule of Civil Procedure 329b to sign the jury waiver order on February 11, 2013 after having signed a final summary judgment on January 29, 2013.  In light of our disposition above, we need not address this contention.

### CONCLUSION

We affirm the Final Summary Judgment signed on January 29, 2013.

/s/    William J. Boyce
Justice

Panel consists of Justices Boyce, and Brown (Christopher, J., dissenting).