**Affirmed and Opinion filed January 6, 2022.**



In The

# Fourteenth Court of Appeals

## NO. 14-20-00008-CV

## IN THE MATTER OF THE MARRIAGE OF LETICIA G. MONCUR AND ROSS S. MONCUR

**On Appeal from the 310th District Court
Harris County, Texas
Trial Court Cause No. 2017-82536**

## O P I N I O N

Leticia G. Moncur appeals from a final decree of divorce that purported to dissolve her marriage to appellee Ross S. Moncur. The decree incorporated a mediated settlement agreement (MSA) signed by the parties. Leticia alleges, however, that Ross fraudulently induced her into signing the MSA by purposefully failing to disclose community property assets prior to or during mediation. In two issues on appeal, Leticia contends that the trial court abused its discretion in (1) denying her motion to rescind or set aside the MSA and (2) denying her motion for continuance and failing to rule on her motion to compel in a timely manner. We

affirm.

## *Background*

Leticia and Ross were married in July 2002 and have one child together, a daughter born in 2004. Divorce proceedings were first initiated by Ross in Dubai, United Arab Emirates, where the family lived for a time.[1] These proceedings resulted in a decree of divorce issued in 2016, which both sides appealed. Meanwhile, Ross also filed a partition suit in Florida regarding real property that the couple owned in that state. And, in 2017, Leticia filed several pleadings in Harris County, Texas, including a petition to modify the Dubai court's orders regarding the child and an original petition for divorce. Leticia propounded discovery to Ross in the modification proceeding, and Ross responded with some answers and objections. Of particular note, in response to Leticia's request for production no. 8, which asked for all statements for financial accounts since the date of marriage held in Ross's name or jointly with another person, Ross made various objections and responded with information from one account, a JP Morgan Chase account that he held with his daughter. The proceedings in Harris County were all consolidated into the cause currently before us in this appeal.

In April 2018, the parties attended mediation and signed the MSA with the aim of ending all litigation between them except as to issues concerning the child. Among other terms, the MSA provided that Leticia was to receive half of a retirement account in Ross's name, $94,000 in cash from Ross, and any other real and personal property and accounts in her name or possession. Ross also received half of the retirement account, as well as the real property in Florida and any other real and personal property and accounts in his name or possession. The MSA also

---

[1] It was disputed below and never conclusively established as to whether the Dubai proceedings were pursuant to Sharia law.

provided that all discovery obligations between the parties "shall immediately cease," except in regard to issues related to the child. The lawyer for each party also signed the MSA, but Leticia's lawyer handwrote "[i]nstructed by client to sign" beside her signature.[2]

After signing the MSA, Leticia changed lawyers and alleged that Ross had failed to disclose a number of community property financial accounts in his name prior to or during mediation. She asserted Ross previously had disclosed some accounts but had kept others hidden. She purportedly received a check from Ross at some point post-mediation that was drawn on a Chase bank account that he had not disclosed. Leticia filed a motion to rescind or set aside the MSA on the ground that it had been procured by fraud, specifically alleging Ross had concealed assets "throughout the marriage, during the divorce proceedings in Dubai and Texas and at the time she signed the MSA." Leticia also requested additional time to conduct discovery so that she could support her allegation of fraud. Leticia then sent subpoenas duces tecum to several financial institutions where she believed Ross had accounts. Meanwhile, Ross filed a motion to enforce the MSA as well as a motion for protection. Of the financial institutions that received subpoenas from Leticia, only Chase responded by producing records for an account owned by Ross. The trial court denied Leticia's motion for continuance and her motion for reconsideration of the motion for continuance.

The trial court then held an evidentiary hearing on Leticia's motion to rescind and Ross's motion to enforce. At the beginning of the hearing, Leticia's attorney urged the court to consider Leticia's motion to compel and Ross's motion

---

[2] Ross's deposition was scheduled for two days after the date of mediation, but the parties having signed the MSA, that deposition never occurred. After replacing her attorney, Leticia later alleged in a motion that "[h]aving never obtained responses to written discovery or Ross' oral deposition or even a sworn inventory, [the prior attorney] agreed to mediation which was clearly malpractice."

for protection before proceeding on the merits of the motions to rescind and enforce, but the trial court declined this request and considered the motions to rescind and enforce first.

The only two people to testify during the hearing were Ross and Leticia. Both parties spoke somewhat inconsistently regarding what information Ross provided and Leticia was aware of regarding their financial accounts.

In his testimony, Ross stated that at the time of the mediation, he and Leticia were not on speaking terms, they had no communication or exchange of financial information at the mediation, and he did not make any representations about assets or any statements causing her to enter the MSA. He noted that he had not filed a sworn inventory in the Harris County cases but asserted there had been an "exchange of financial assets" in the Dubai proceedings and she saw his bank account records and received "hundreds of pages" from his personal accounts. Ross acknowledged that he did not personally turn records over to Leticia but said that she shared a text with him that she had received from the Dubai court showing the records she had received. Ross also averred that Leticia had sent him emails validating she had received all of his bank records. He further said that Leticia was "aware of all of [his] bank accounts."

Ross confirmed that the only account he disclosed in response to Leticia's requests for production in the modification suit was the Chase account he opened with his daughter and that he had not provided any other bank records in the six months since responding to that discovery. Ross said that in the Dubai proceedings, his lawyers turned over HSBC financial records from one or two accounts but not records from Chase. Ross also said that at the time Leticia filed her first petition in Harris County, he believed they were already divorced in Dubai.

4

Leticia acknowledged in her testimony that her original filings in Harris County indicated the couple had already been divorced in Dubai, but she subsequently concluded that the Dubai divorce had not been finalized. She further acknowledged that there was no interaction between the sides at mediation, she was not forced to sign the MSA, and she signed it because she wanted to simplify matters and receive the $94,000 that she was entitled to under the MSA. She also recognized that prior to signing the MSA, she had obtained some financial documents in Dubai, including bank statements. At no point did she disclose any financial information or provide a sworn inventory to Ross. Leticia said that at mediation, she brought up the Merrill Lynch retirement account that she knew about prior to mediation and out of which she was to receive half the funds under the MSA terms.

Further regarding the Dubai proceedings, Leticia testified that she had learned the day before the hearing that the Dubai divorce had been finalized. She said that there had been no disclosure of financial information in the Dubai proceedings prior to the divorce being granted because under Sharia law, she had no right to Ross's assets. After the Dubai divorce was granted and while appeals were pending, Ross disclosed one year of information from a joint account at HSBC and information regarding one of his personal accounts.

Leticia asserted that before she received the subpoenaed records from Chase, she had had no idea that Ross held another Chase account beyond the one he owned with their daughter that he disclosed in response to discovery in the modification suit. Based on the Chase records that were admitted into evidence, Leticia testified that Ross opened the previously undisclosed account during the marriage, the records show deposits from other accounts of which she was unaware, and a total of around $1.5 million in deposits went into the account over a

5

five-year period. Leticia insisted that she would not have signed the MSA had she known about the undisclosed Chase account. She acknowledged, however, that she did not disclose how much money had flowed through her own accounts as that information was not requested.

Leticia also testified that two accounts were disclosed to her in the Dubai proceedings: one account that was in both of their names and a personal account that Ross had in Dubai. She said that receiving the check from Ross drawn on a Chase bank account "shocked" her because during the marriage, they only banked at Bank of America and HSBC. She acknowledged, however, that she knew about the account Ross held with their daughter at Chase.

When asked by her own attorney why she had signed the MSA when there had not been a disclosure of records, she responded that the information had been requested but not provided. She also said that she would not have signed the MSA or agreed to waive further discovery had she known there were additional, undisclosed funds.

Two affidavits by Leticia were admitted into evidence. In one, she stated that after mediation, she contacted Merrill Lynch to verify the balance in the retirement account and was informed that there was "more than one" account. She also stated that she had learned about previously undisclosed accounts that Ross had with Chase in Florida and HSBC in the United Arab Emirates. In the second affidavit, Leticia averred that prior to divorce proceedings, Ross had told her about one retirement account and five joint accounts, three with HSBC and two with Bank of America. She did not explain the context in which he told her about these accounts. She said that she was unaware of any other bank or retirement accounts. In her testimony, Leticia acknowledged that at mediation, she was aware of the six accounts listed in the second affidavit in addition to the one mentioned in response

6

to discovery in the modification suit. She further explained that the information she received in the Dubai proceedings was from these accounts she already knew about.

At the conclusion of the hearing, the trial court noted that they did not get to the motion to compel or the motion for protection and a hearing on those motions would need to be rescheduled. However, no such hearing ever occurred. The trial court denied both Leticia's motion to rescind and Ross's motion to enforce the MSA but did not expressly rule on the motions to compel or for protection. The court thereafter issued its final decree, which incorporated the terms of the MSA but also set out orders governing conservatorship of and possession and access to the parties' minor child.

## I. Fraudulent Nondisclosure

In her first issue, Leticia contends that the trial court erred in denying her motion to rescind the MSA and instead entering a final decree incorporating the MSA because the MSA was procured through fraud. More specifically, she contends Ross induced her to sign the MSA by fraudulently failing to disclose complete information regarding community property assets when he had a duty to do so.

### A. Governing Law

The Family Code provides that MSAs meeting certain statutory formalities are binding on the parties and require the rendition of a divorce decree that adopts the parties' agreement. Tex. Fam. Code § 6.602(b)-(c); *Highsmith v. Highsmith*, 587 S.W.3d 771, 775 (Tex. 2019); *Milner v. Milner*, 361 S.W.3d 615, 618 (Tex. 2012). Section 6.602, however, does not require enforcement of an MSA that is illegal in nature or procured by fraud, duress, coercion, or other dishonest means.

7

*E.g.*, *In re Marriage of Penafiel*, 633 S.W.3d 36, 44 (Tex. App.—Houston [14th Dist.] 2021, no pet.). Here, Leticia concedes that the parties' MSA met the statutory requirements but contends it was procured by fraud.[3]

A trial court's determination of whether to set aside an MSA for reasons other than conformity with section 6.602 is reviewed under an abuse of discretion standard. *Id*. A trial court abuses its discretion by acting arbitrarily, unreasonably, or without reference to guiding rules or principles. *In re J.R.P.*, 526 S.W.3d 770, 777 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The failure to analyze or apply the law correctly also constitutes an abuse of discretion. *Id*. A trial court does not abuse its discretion if it correctly follows the law and there is some evidence of a substantive and probative character to support its decision. *Id*.

When, as here, the trial court did not file findings of fact and conclusions of law, we infer all findings necessary to support the judgment and will uphold those findings if sufficient evidence supports them. *Chenault v. Banks*, 296 S.W.3d 186, 189 (Tex. App.—Houston [14th Dist.] 2009, no pet.). When the proper standard of review is abuse of discretion, challenges to the sufficiency of the evidence are not independent grounds for reversal but instead are factors to be considered in determining whether the trial court abused its discretion. *In re J.R.P.*, 526 S.W.3d at 777. When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable

---

[3] An MSA "is binding on the parties" if it:

(1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;

(2) is signed by each party to the agreement; and

(3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

Tex. Fam. Code § 6.602(b). Leticia appears to concede in this appeal that the MSA in question is governed by section 6.602 and meets the requirements of the section.

inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 827. Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the conclusion under review. *Id.* Evidence is factually sufficient if it is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *In re J.R.P.*, 526 S.W.3d at 777. The factfinder is the sole judge of the witnesses' credibility and the weight to be given their testimony, and we may not interfere with the factfinder's resolution of conflicts in the evidence. *Id.*

When, as here, an appellant is attacking the sufficiency of the evidence supporting an adverse implied finding on an issue for which she had the burden of proof, a legal sufficiency challenge will be successful only if the appellant demonstrates that the evidence establishes, as a matter of law, all vital facts in support of the issue, and a factual sufficiency challenge will be successful only if the appellant demonstrates that the adverse finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam).

Fraud by non-disclosure is a subcategory of fraud that occurs when a party has a duty to disclose certain information and fails to disclose it. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219 (Tex. 2019). To establish fraud by non-disclosure, the plaintiff must show: (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the non-disclosure, which resulted in injury. *Id.* at 219-20.

9

Reliance for purposes of proving fraud must be reasonable and justified. *Simulis, L.L.C. v. Gen. Elec. Cap. Corp.*, 439 S.W.3d 571, 577 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

There is generally no duty to disclose without evidence of a confidential or fiduciary relationship. *See Bombardier Aerospace*, 572 S.W.3d. at 220. A duty to disclose may also arise, however, when the defendant: (1) discovered new information that made his earlier representation untrue or misleading, (2) made a partial disclosure that created a false impression, or (3) voluntarily disclosed some information, creating a duty to disclose the whole truth. *Id.*

**B. Analysis**

Leticia's task in this appeal is decidedly an uphill one. She contends that she reasonably relied on information that was obtained piecemeal, but she failed to engage in a complete discovery process before mediating and, indeed, agreed to waive further discovery in signing the MSA. It should go without saying that a contested divorce is an adversarial proceeding. Parties must act to protect their own interests. On this record, Leticia has not established either that the evidence conclusively established all elements of her fraud by nondisclosure claim or that the trial court's adverse finding on that claim was against the great weight and preponderance of the evidence. *See Dow Chem.*, 46 S.W.3d at 242.

We begin by examining Leticia's assertion that Ross had a duty to fully disclose information regarding financial accounts that might contain community property. Leticia alleges two bases for this supposed duty—the fact that she and Ross were married and the fact that he did disclose some financial information to her.

**Marital duty.** In support of her marital duty to disclose contention, Leticia

10

relies on the fact that a marriage creates a fiduciary relationship between the parties to the marriage. She contends that because of that relationship, Ross owed her a duty to disclose material facts within his knowledge, citing *Buckner v. Buckner*, 815 S.W.2d 877, 880 (Tex. App.—Tyler 1991, no writ.). While it is true that marriage creates a fiduciary relationship, the fiduciary nature of the relationship terminates when each spouse is independently represented by counsel in a contested divorce proceeding. *See, e.g.*, *Solares v. Solares*, 232 S.W.3d 873, 881 (Tex. App.—Dallas 2007, no pet.); *Boaz v. Boaz*, 221 S.W.3d 126, 133 (Tex. App.—Houston [1st Dist.] 2006, no pet.). It was established in this case and undisputed that Ross and Leticia both had counsel and that the divorce proceedings were adversarial long before the mediation occurred and the MSA was signed.[4] In fact, attorneys representing both parties attended mediation and signed the MSA. Accordingly, by then, there had been no fiduciary duty between the parties for some time. Therefore, Ross had no fiduciary duty to disclose financial information at or near the time of the MSA. *See Michels v. Zeifman*, No. 03-08-00287-CV, 2009 WL 349167, at *4 (Tex. App.—Austin Feb. 12, 2009, pet. denied) (mem. op.) (holding trial court did not err in dismissing fraud by nondisclosure claim because fiduciary duty between married couple had terminated in contested divorce proceedings).

**Partial disclosure.** Leticia next argues that Ross's disclosure of some financial information created a false impression about the value of community assets and was misleading and therefore created a duty requiring full disclosure of financial information. *See Bombardier Aerospace*, 572 S.W.3d. at 220; *Siddiqui*, 504 S.W.3d at 371; *White v. Zhou*, 452 S.W.3d 527, 539 (Tex. App.—Houston [14th Dist.] 2015, no pet.). At the hearing, Leticia asserted and Ross acknowledged

---

[4] Divorce proceedings began in Dubai in 2015, and the first filing in Texas occurred in July 2017. The mediation occurred in April 2018.

that he had disclosed some information regarding financial accounts but had not disclosed at least one account to Leticia. Specifically, in one of her affidavits admitted at trial, Leticia stated that prior to any divorce proceedings, Ross had told her about one retirement account and five joint accounts. Ross testified that Leticia received hundreds of pages of financial information in the Dubai proceedings, but he acknowledged this did not include information regarding his personal Chase account. In answering discovery in the Harris County modification suit, Ross disclosed one account that he held jointly with the couple's daughter but, again, did not disclose his personal Chase account.

However, in determining whether a partial disclosure created a false impression or was misleading and created a duty to disclose the whole truth, context matters. Leticia did not explain when, how, or why Ross told her about the six accounts she mentions in her affidavit. There is also scant information in the record regarding why Leticia received certain financial records in the Dubai proceedings and not others. It appears that it occurred during the appeal of the Dubai divorce decree, but there is no indication whether it was in response to some type of discovery or whether it was solely because the accounts in question were joint accounts or perhaps were subjects of the Dubai decree. Leticia testified that originally there was no disclosure of financial information in the Dubai proceedings because she had no right to Ross's assets in that country.

In short, there is no explanation in the record as to why documentation and information was provided on some accounts and not on Ross's personal Chase account or other accounts that might have existed.[5] Without knowing the context of the prior disclosures, it is impossible to know whether they created either a false

_____

[5] Leticia speculates based on the movement of funds through the Chase account that Ross may have other undisclosed accounts that could contain community property. Unlike with the Chase account, Ross did not acknowledge the existence of any other undivulged accounts.

impression that Ross had a duty to correct or a duty to disclose the whole truth. *See Siddiqui*, 504 S.W.3d at 369 ("The failure to disclose information is equivalent to a false representation only when particular circumstances impose a duty on a party to speak, and the party deliberately remains silent."); *see also Cantillo v. Cantillo*, 627 S.W.3d 367, 373 (Tex. App.—El Paso 2021, no pet.) (holding trial court did not abuse its discretion in determining husband failed to establish either that wife made a partial disclosure and conveyed a false impression or disclosed some information creating a duty to disclose the whole truth). If Ross was required to provide information on all accounts that could contain community property or if he represented to Leticia that he was providing such information or circumstances suggested as much, then a duty might arise to make sure the disclosure was complete, but if there was no such requirement or representation or circumstances then no such duty likely arose. In the absence of such contextual evidence, we cannot say that the trial court abused its discretion in refusing to set aside the MSA on the ground of fraudulent nondisclosure.

Leticia additionally suggests that Ross's incomplete answer to discovery in the modification suit created a duty for him to provide complete financial information, citing generally Texas Rule of Civil Procedure 193. *See* Tex. R. Civ. P. 193.1–193.7. As explained above, Ross answered request for production no. 8 in the modification case—which asked for all statements since the date of marriage for financial accounts held in Ross's name or jointly with another person—by providing information only for a joint account he held with the couple's daughter. However, even presuming this answer was incomplete and could have generated a duty to provide full disclosure of financial accounts, Leticia has offered no explanation either as to how it alone would have created a false impression or why it would have been reasonable for Leticia to rely on that answer in entering the

MSA when she already knew about six other accounts that would be responsive to the request and thus knew the response was incomplete. *See Simulis*, 439 S.W.3d at 577 (explaining that reliance for purposes of proving fraud must be reasonable and justified); *cf. AME & FE Invs., Ltd. v. NEC Networks, LLC*, No. 04-17-00332-CV, 2019 WL 286121, at *5 (Tex. App.—San Antonio Jan. 23, 2019, no pet.) (mem. op.) ("[R]easonable people could not conclude that [party] did, in fact, rely on financial information that it knew was inaccurate and incomplete."). Leticia has not established that the trial court abused its discretion in refusing to set aside the MSA. Accordingly, we overrule her first issue.

### III. Motion for Continuance and Motion to Compel

In her second issue, Leticia contends that the trial court erred in denying her motion for continuance and in failing to rule on her motion to compel. Leticia filed the motion for continuance—after signing the MSA and filing her motion to rescind—with the express purpose of seeking discovery related to her fraud allegation. She filed the motion to compel a couple of months later seeking to compel Ross's deposition and responses to written discovery.

From the trial court's perspective, prior to filing these motions, Leticia had failed to engage in a complete discovery process before signing the MSA and, indeed, had waived her right to conduct discovery in the MSA, but then expressed surprise that Ross might have accounts of which she was unaware.[6] Moreover, in urging her motions, Leticia effectively failed to explain how or why Ross was at fault for her lack of knowledge and, to some extent, appeared to blame her prior

---

[6] Leticia asserts that she propounded discovery on Ross but that he resisted responding, arguing among other things that the parties had already been divorced in Dubai and thus discovery in Texas was unnecessary. While this may be true, Leticia signed the MSA knowing that Ross had not answered discovery and without using the tools at her disposal to obtain Ross's answers to discovery. *See generally* Tex. R. Civ. P. 215.

attorney for her lack of knowledge. Under these circumstances, the trial court did not abuse its discretion in denying her motion for continuance and committed no reversible error in failing to rule on her motion to compel.

**Motion for continuance.** Leticia filed her motion for continuance pursuant to Rule of Civil Procedure 251, which states that no continuance may be granted "except for sufficient cause supported by affidavit, by consent of the parties, or by operation of law." Tex. R. Civ. P. 251. We review the denial of a motion for continuance under the abuse-of-discretion standard. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). In determining whether the trial court abused its discretion in denying a request for a continuance to conduct further discovery, courts consider the following nonexclusive factors: (1) the length of time the case has been on file, (2) the materiality of the discovery sought, and (3) the movant's diligence in obtaining the discovery. *Tri-Stem, Ltd. v. City of Houston*, 566 S.W.3d 789, 799 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

In her motion for continuance and her motion for reconsideration of the denial of the continuance, Leticia asserted that a continuance was necessary to conduct discovery in support of her contention that Ross fraudulently induced her into signing the MSA by concealing assets. As discussed above, there can be no fraudulent nondisclosure absent a duty to disclose some material fact. *See Bombardier*, 572 S.W.3d at 219-20. At least twice during the hearings on Leticia's motions, the trial judge questioned whether there was any support for the fraud allegation that would justify granting more time for discovery, particularly in light of the fact the MSA waived further discovery. Across two motions and two hearings, Leticia made three arguments as to why Ross had a duty to fully disclose all financial accounts: the similarity of the facts to those in *Boyd v. Boyd*, the

15

fiduciary duty owed between spouses, and Ross's abuse of the judicial process by resisting discovery. The trial court did not abuse its discretion in concluding that none of these arguments had merit and therefore a continuance was not necessary.

First, Leticia relied heavily on the *Boyd* case, in which the court held that under the circumstances, a husband had fraudulently induced his wife into signing an MSA by failing to disclose assets during divorce proceedings. 67 S.W.3d 398, 404-05 (Tex. App.—Fort Worth 2002, no pet.). The holding in *Boyd*, however, turned on the fact that each party had expressly represented in signing the MSA that they had "made a fair and reasonable disclosure to the other of the property and financial obligations known to them." *Id*. The MSA at issue in the present case contained no such provision.

Next, Leticia asserted that Ross had a duty to fully disclose all assets to her because, as a married couple, he owed her a fiduciary duty of full candor. As discussed above, however, the fiduciary duty in a marital relationship terminates when each spouse is independently represented by counsel in a contested divorce proceeding. *See Michels*, 2009 WL 349167, at *4; *Solares*, 232 S.W.3d at 881; *Boaz*, 221 S.W.3d at 133. That occurred in this case well before execution of the MSA. To the extent Leticia intended to argue that Ross made misrepresentations before any divorce proceedings were filed which induced her to sign the MSA months or years later, she offered no support for such argument. In her second affidavit, Leticia stated that Ross told her about six accounts and she did not know about any other bank or retirement accounts. She did not, however, describe the circumstances under which or the manner in which Ross allegedly informed her about the six accounts. As discussed above, context matters. If Ross did not represent that he was giving her complete information and the circumstances gave her no reason to think the information was complete, no duty to provide complete

16

information arose before Leticia signed the MSA. *See Cantillo*, 627 S.W.3d at 373; *Siddiqui*, 504 S.W.3d at 369.

Lastly, Leticia complained that Ross had resisted discovery and abused the judicial process. The remedies for discovery intransigence and abuse, however, are well established. *See generally* Tex. R. Civ. P. 215 (governing discovery abuse); *In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (discussing trial courts' inherent powers to impose sanctions). Generally, the proper course of action for a party concerned that an opposing party has not properly responded to discovery would be to file a motion to compel and potentially seek sanctions, not sign an MSA and then allege fraudulent nondisclosure. In short, Leticia failed to establish either sufficient cause for a continuance supported by affidavit or that the evidence she sought was material to any viable claims in the lawsuit. *See* Tex. R. Civ. P. 251; *Tri-Stem, Ltd.*, 566 S.W.3d at 799. Accordingly, the trial court did not abuse its discretion in denying the motion for continuance.

**Motion to compel.** Additionally, under her second issue, Leticia asserts that the trial court erred in failing to consider and rule on her motion to compel within a reasonable time. Leticia specifically argues that the trial court erred by not considering the motion to compel before considering the competing motions to rescind and enforce the MSA.[7] Although Leticia filed her motion to compel well

---

[7] In support of her argument, Leticia cites only mandamus cases. *See, e.g.*, *In re Foster*, 503 S.W.3d 606, 607 (Tex. App.—Houston [14th Dist.] 2016, orig. proceeding); *Safety-Kleen Corp. v. Garcia*, 945 S.W.2d 268, 269 (Tex. App.—San Antonio 1997, no pet.). Complaints about a court's refusal to rule on a motion are ordinarily raised in a petition for writ of mandamus. *Newsome v. Dretke*, No. 12-08-00105-CV, 2008 WL 4335111, at *4 (Tex. App.—Tyler Sept. 24, 2008, no pet.) (mem. op.). It is questionable whether having only cited mandamus cases, Leticia has properly supported her argument with citation to relevant authority. *See* Tex. R. App. P. 38.1(i); *In re E.B.L.G.*, No. 14-06-01095-CV, 2009 WL 3126406, at *3 (Tex. App.—Houston [14th Dist.] Sept. 29, 2009, no pet.) (mem. op.) (noting party complaining on appeal regarding trial court's failure to timely rule on several motions provided no authority in support of her argument where she only cited opinions in original proceedings).

after she filed her motion to rescind, she urged the court to consider the motion to compel first, asserting that evidence obtained as a result of granting the motion to compel would be relevant in considering the motion to rescind. At the hearing set for four motions—Leticia's motions to rescind and compel and Ross's motions to enforce and for protection—over Leticia's objection, the trial court first took evidence and argument on the motions to rescind and enforce. When those proceedings went long, the judge stated that a new hearing would need to be set for the motions to compel and for protection. The court did not make a ruling on any of the four motions at that time.

In an appeal, we generally may reverse a trial court's judgment only if the error complained of probably caused the rendition of an improper judgment or prevented the appellant from properly presenting the case on appeal. *See* Tex. R. App. P. 44.1(a). Although it may have made sense for the trial court to have considered the motion to compel before the motion to rescind, the court's decision to consider the motion to rescind first was not reversible error. Leticia's concern appears to be that had the trial court subsequently granted the motion to compel, the evidence gathered as a result could have been useful in support of her motion to rescind. But a trial court generally has authority to reconsider rulings on motions and receive additional evidence and argument until its plenary power expires. *See Penafiel*, 633 S.W.3d at 48; *In Guardianship of Macer*, 558 S.W.3d 222, 231 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Moring v. Inspectorate Am. Corp.*, 529 S.W.3d 145, 150 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). Had the trial court considered and granted the motion to compel after hearing the motion to rescind, the court simply could have reopened evidence and argument on the motion to rescind or reconsidered its ruling on the motion to rescind had it made one by then. Accordingly, the trial court did not commit reversible error in failing

18

to consider the motion to compel before the motion to rescind. *See* Tex. R. App. P. 44.1(a). We therefore overrule Leticia's second issue.

We affirm the trial court's judgment.

/s/　　Frances Bourliot
　　　　Justice

Panel consists of Justices Jewell, Bourliot, and Wilson.